## R. J. Reynolds Tobacco Company v. City of Lexington.

### (Decided October 4, 1918.)

### Appeal from Fayette Circuit Court.

1. Licenses—Tax Upon Corporation Conducting Tobacco Warehouse. —A foreign tobacco manufacturing corporation which owns a warehouse in a city of the second class in Kentucky, which it uses as a storage warehouse and a redrying plant for its own tobacco, is liable for a license tax under an ordinance imposing such a tax upon every corporation "conducting a tobacco warehouse where sales or purchases of tobacco are conducted or tobacco storage houses where tobacco is stored, or rehandled."

2. Licenses—Tax for Privilege of Conducting Warehouse.—Under the charter of cities of the second class authorizing the imposition of fees on franchises, trades, occupations and professions, a city may require a license fee for the privilege of conducting a warehouse at which the owner's tobacco is stored or rehandled—the terms "trade" and "occupation" being used synonymously with the term "business."

ALLEN & DUNCAN for appellant.

JAMES G. DENNY and J. EMBRY ALLEN for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

On August 17th, 1914, the Board of Commissioners of the City of Lexington adopted an ordinance prescribing license fees for certain trades and occupations, and amending the general license ordinance then in force. Section 2 of the ordinance, as amended, reads as follows:

"Every person, firm or corporation engaged in, or acting as agent for, the sale or purchase of goods, grains, tobacco, wares or other merchandise, shall pay an annual license of $25.00. Every person, firm or corporation conducting a tobacco warehouse, where sales or purchases of tobacco are conducted, or tobacco storage

houses where tobacco is stored, or rehandled, shall pay an annual license of $25.00 per year for each house."

The appellant, R. J. Reynolds Tobacco Company, is a North Carolina corporation, which manufactures tobacco upon a large scale in its factories at Winston-Salem, in that state. It owns certain real estate in Lexington, on which it has constructed and now operates a storage warehouse, and a redrying plant. It buys in Kentucky, annually, large quantities of tobacco, much of which is delivered to it at Lexington, where it is stored in appellant's warehouse, and rehandled or redried in its redrying plant. It does not store any tobacco for other persons; it does not handle or redry any tobacco, except its own. The tobacco is bought in the loose leaf markets in Kentucky, in loose leaf form, and the redrying process is necessary in order to pack it in hogsheads for the purpose of shipment to its manufacturing plant at Winston-Salem.

The city of Lexington, having demanded of appellant that it pay the license fee of $25.00 imposed by the new ordinance, the appellant declined to pay it, and thereupon brought this action for the purpose of enjoining the city of Lexington from punishing appellant through the penal processes of its police court, for its failure to pay the tax. The circuit court sustained the ordinance, refused the injunction, and dismissed the petition, and from that judgment the company prosecutes this appeal.

In denying its obligation to pay this license the appellant contends (1) that under a proper construction of the ordinance it is not required to pay a license tax; and, (2) that if the ordinance should be construed as requiring the appellant to pay a license tax, the tax is illegal and void.

It is not contended that the appellant is engaged in the business of storing or rehandling tobacco for other owners of tobacco; on the contrary, it is admitted that it stores and rehandles only its own tobacco. The title to the new ordinance in question reads as follows:

"An ordinance prescribing license fees for certain trades, occupations and businesses, fixing the amount of such license fees and prescribing a punishment for the violation thereof and repealing all ordinances in conflict therewith."

Section 1 of the ordinance provides as follows:

"Each and every person, corporation or company which shall engage in, conduct or carry on any trade, occupation, employment or business hereinafter named shall pay to the city of Lexington a license fee in the respective amounts hereinafter set forth," etc.

Section 2 of the ordinance has been quoted above.

The appellant contends that it was the plain purpose of the Board of Commissioners to fix and impose license fees only on those who were engaged in the "trade, occupation, employment or business" mentioned, and not to impose a license fee on any person who was not engaged in one or the other of the particular trades, occupations or businesses enumerated; that the purpose of the ordinance was to impose a tax on "business" and not on the mere use of property; and that unless the use of the property constitutes a "trade" or "business," no tax can be imposed upon it. Carrying out this idea, appellant insists that it is not engaged in the "business" of storing tobacco, nor in the "business" of rehandling tobacco; but that it merely uses its warehouse in a particular way, exclusively for itself, and from which it derives no profit.

We have been cited to several definitions of the term "business," declaring in substance that "business" is that which occupies the time, attention or labor, or means for the purpose of profit or improvement; or, that ordinarily it means a business in a trade or commercial sense, carried on with a view to profit or livelihood. Trustees of Columbia College v. Lynch, 47 Howard Prac. 473; State v. Boston Club, 45 La. Ann. 585, 20 L. R. A. 185; Cuzner y. California Club, 155 Cal. 303, 20 L. R. A. (N. S.) 1095; Allen v. Commonwealth, 188 Mass. 59, 69 L. R. A. 599.

We fail to comprehend, however, how these definitions, relied upon by the appellant, can be said to sustain its contention, since it is apparent that in storing and rehandling its tobacco in Lexington, the appellant is engaged in a business with a view to profit or livelihood. It is argued that to conduct or carry on a business necessarily involves commercial or contractual relations with others whereby the person conducting the business expects to make a profit out of it; that no one can carry on a business with oneself; that a person cannot contract with himself; and that he cannot make a profit or livelihood by dealing with himself. But certainly this is too

narrow a view of the question, since appellant, like all manufacturers, must first make his goods before he can sell them to other persons, and, in doing so, he cannot be said to be dealing with himself. And, it cannot reasonably be claimed that a manufacturer is not engaged in business until he sells his product. On the contrary, it is, in our opinion, too plain for serious argument that a manufacturer is engaged in business whenever he begins making a product for the purpose of sale. Andonique v. Carmen, 151 Ky. 283, relied upon by appellant only holds that individuals or companies residing in another state are "engaged in business in this state," when a sale of goods, wares or merchandise is made by an agent in this state, even though there be but one transaction, and is not in conflict with the view above expressed. We conclude, therefore, that when the appellant buys tobacco, and stores it and rehandles it in Lexington, it is engaged in the business of storing and rehandling tobacco within the terms of the ordinance.

But it is further contended that the ordinance is illegal and void because there is no authority under the statute governing cities of the second class for requiring appellant to pay a fee for the privilege of conducting a warehouse in which tobacco is stored or rehandled, unless such storing or rehandling is conducted or carried on as a "trade" or "occupation." Under section 172 of the Constitution, there may be a tax on "property;" and by section 181 of that instrument the General Assembly is given power to delegate to cities the power "to impose and collect license fees on stock used for breeding purposes, on franchises, trades, occupations and professions." The charter of cities of the second class, to which Lexington belongs, directs the levying of an *ad valorem* tax on property, and authorizes the imposition of "fees . . . on franchises, trades, occupations and professions." Ky. Sts., sec. 3174. It is contended that there is no authority under the statute for requiring appellant to pay a fee for the privilege of conducting a warehouse at which tobacco is stored or rehandled, unless such storing or rehandling is conducted or carried on as a "trade" or "occupation." The terms "trade" and "occupation" are obviously used synonymously with the term "business." But, it is contended that the attempt to impose a tax on appellant for using its own building to store and rehandle its own tobacco, is not a

trade, occupation or business tax, but is merely a tax on the use of property for which there is no legal warrant. But, as heretofore stated, the appellant is clearly engaged in business, and as the terms ''trade'' and ''occupation,'' used in the statute, *supra,* are used synonymously with the term ''business,'' it necessarily follows that the appellant comes within the meaning of the statute, and that this second contention of appellant is but a repetition, in a different form, of its first contention. It being stipulated in this case that the appellant buys, stores and rehandles tobacco in Lexington, it must necessarily follow that it is engaged in business in Lexington; and to say that it must store and rehandle tobacco for other persons before it can be said to be engaged in business, or that it is not engaged in business when it uses its own property in storing and rehandling its tobacco, would be giving a strained construction to a statute couched in ordinary terms, and the meaning of which is free from doubt. This should not be done, since the statute expressly provides that all words and phrases of a statute are to be construed and understood according to the common and approved usage of language. Ky. Sts., sec. 460. The judgment of the circuit court in refusing the injunction was right, and it is affirmed.