# Lone Star Shows, Inc., v. Commissioner of Sinking Fund of City of Louisville et al.

April 30, 1943.

Lawrence S. Grauman and Simeon S. Jacobs for appellant.

Lawrence S. Poston and Richard H. Hill for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming in part and reversing in part.

In 1939 the legislative department of the city of Louisville enacted "An Ordinance providing for certain licenses, the fees therefor to be paid into the sinking fund of the city of Louisville." Its section 2 says: "Every company, corporation, firm, individual, or association owning or operating an aggregation of shows, amusements, concessions, operated together on one lot or street or on contiguous lots or streets, whether the same are owned or operated by separate persons or not, shall pay in advance a license of Two Hundred Dollars ($200.00) per day," and section 5 thereof says: "The provisions of this ordinance shall not apply to a regularly licensed amusement park." That ordinance is referred to in the record as "No. 50 series 1939" and will hereinafter be referred to as "No. 50." In 1940 another ordinance was enacted by the same city department levying a license tax on various businesses and occupations conducted in the city, and which is referred to in the record as "Ordinance No. 187" by which number it will hereinafter be referred to. Section 18 of Ordinance 187 says: "Amusement: Except as otherwise herein provided, every person in the City engaged in the business of operating a theater, amusement park, baseball park, or other place of entertainment or amusement shall pay an annual license for the privilege of engaging in business in the City as prescribed in Rate Schedule 'B' of this ordinance. Provided, however, the minimum annual license of any such person shall be Sixty-two Dollars ($62.00)." Its section 60 prescribes that, "This ordinance does not repeal any of the following ordinances nor amendments thereof, towit: * * * The ordinance approved March 1, 1939, providing for the licensing of *carnivals,* being Ordinance No. 50, Series 1939." (Our emphasis).

In July, 1942, the appellant was incorporated under the name of Lone Star Shows with the authority to engage in and conduct the business of "an amusement company" with power to lease or otherwise acquire, operate and maintain "Merry-Go-Round, Loop-the-Loop, Gravity and pleasure railways, Aero-coasting swings, Ferris Wheel, and all other devices of a like nature calculated

to offer amusement to the public and profit to the company. Also to manufacture heat, buy, lease or otherwise acquire, sell and deal in scenery, stage appliances, theatre appliances and other articles suitable for use on stage or in amusement enterprises, theatres, moving picture shows or public or private parks, dramatic manuscript or copyright whatsoever which may be used for the basis for the amusement or entertainment of persons in public or private places. To carry on the business of, and to do any and all things that may be ordinarily conducted by dramatic and operatic agents and managers of the amusement enterprises of any kind, including the manufacture of appliances used in theatrical amusement enterprises. Also to conduct amusement enterprises of all kinds.''

The chief stockholder, and president of the corporation, was and is Marshall F. Kaufman, who, together with other members of his family, owned all, or practically all, of the stock. After becoming incorporated Kaufman applied for a license to operate an Amusement Park, as prescribed in Ordinance 187 (1940), for which he paid $62, the minimum amount. His company (appellant), in the meantime, had acquired the contrivances enumerated in appellant's charter, which, according to the testimony of appellant's president, consisted of a ''Merry-Go-Round, Ferris Wheel, Auto Speedway, Loop Plane, and a Chairoplane, five riding devices and approximately twenty amusement devices, such as ball games, fish pond and pitch-till-you-win and similar things.'' The devices were later—and after procuring the license—set up on an enclosed lot at Eighteenth and Broadway streets in the city. Gate admission fees of 10 cents were charged and an additional charge was exacted from any one participating in the use of any of the acquired devices forming a part of the entire aggregation. The alleged park was operated at the above location for only a few weeks when the wheels began rolling to another location in the southern part of the city, where the business was operated on another vacant space for something like the same time, when the amusement park—with all of its appurtenances and attractions—was again rolled away to another location in the city which experienced but little if any more longevity than the first two locations—after which some component parts of the show became scattered by being loaned to schools or churches in conduct-

ing some of their charitable entertainments. Following such vacillating locations and appropriation of devices appellant applied for a renewal of its license and tendered and offered to pay the minimum license fee which was first paid, or any upward gradation thereof, in accordance with the terms of Ordinance 187, but the city's officer authorized to issue such license declined to do so because he construed the business conducted by appellant as coming within Ordinance 50 (1939) instead of under Ordinance 187 (1940), and that appellant should pay in advance a fee of $200 per day for operating his shows. It declined to pay that amount and then filed this declaratory judgment action in the Jefferson Circuit Court, setting forth the facts substantially as above recited, and in its petition alleged that its business came within the purview of Ordinance 187 instead of within that of Ordinance 50. It was further alleged that section 2 of the latter ordinance levying a fee of $200 per day was invalid, null and void for excessiveness of the required license, and that the city and other of its official defendants, threatened to and would prosecute appellant for operating without a license for which there was demanded of it the tax of $200 per day.

The prayer of the petition sought an injunction against such prosecutions, and for a declaration of appellant's rights in the premises. The answer denied that plaintiff's business as above outlined came within the purview of Ordinance 187, but that it was embraced by Ordinance 50, for which a license fee of $200 per day was required, and it set forth its contention, as was revealed in the petition, and prayed for a judgment in accordance therewith, and that appellant's petition be dismissed. Following the filing of the answer practice motions were made, followed by final submission, after which the court adjudged that appellant's business was embraced—not by Ordinance 187 (1940)—but by Ordinance 50 (1939), and that the latter ordinance was not void for any reason—to reverse which appellant prosecutes this appeal.

At the time appellant last applied for a license it had secured a location on a vacant lot in East Broadway Street, within the city, where it thereafter proposed to operate an amusement park—the lot fronting about 100 feet on Broadway Street and running back perhaps as much as 200 feet. The evidence was heard orally in

118

court, and appellant's president in giving his testimony testified to the various attractions above enumerated, and in explanation of the various moves to different localities he said that it was because of locally developed conditions unfavorable to such an enterprise—the one occurring at the first location consisting of the city improving the street fronting that location and partially obstructing it so as to interfere with patronage. Witness also testified to the entrance fee through the gate to the alleged park where appellant's business was conducted and that patrons, after so entering, paid a fee to temporarily appropriate any of the devices upon the ground. Some concessions to others were made by appellant for different engagements and one of them operated some sort of gambling device, but which witness said was without his knowledge and which he forbade after receiving knowledge thereof from the police. However, other members of his family and—perhaps, stockholders—did possess knowledge of that concession and probably engaged in it. But, however that may be, Ordinance 50 levies its tax of $200 per day, with the devices and contrivances employed upon the premises either *entirely* owned by the proprietor of the business, *or* by his concessionaires.

Appellant alleged in its petition that the city was discriminating against it in demanding the $200 per day license fee when it permitted other similar businesses (as was contended) to operate without obtaining such license, chief among which was Fountaine Ferry Park, the grounds of which contain many acres, and upon which there is erected permanent buildings and which is easily differentiated from the character of business conducted by appellant. The latter has all of its attractions on wheels occupying but a small area and usually on a single lot, thus enabling appellant to migrate with its alleged amusement park from place to place without destroying either its identity or appeal to patrons. As operated plaintiff's business possessed all of the elements of a carnival, at which the attractions furnished by appellant are also employed by the operator of a carnival—one of the definitions of which is given in Webster's New International Dictionary as "An amusement enterprise consisting of side shows, vaudeville, games of chance, merry-go-rounds, etc., also an association for conducting such an enterprise." The business of appellant as described by its president, comes clearly within that definition, al-

though there were, perhaps, no side shows conducted on the premises; but the inserted definition does not require that all of the things expressly named in it should be employed in order to constitute a *carnival,* and the enacting city department so understood and intended by the exception, supra, in the 1940 ordinance, No. 187.

If plaintiff's business in the way and manner it was conducted constituted a carnival, it is our conclusion that it clearly came within the purview of Ordinance 50 for which the $200 per day license fee was demanded. That also would seem to be true from the selected name of appellant—although that fact would not be conclusive, which, as will be seen, was "Lone Star Shows." That conclusion is further fortified by the fact that the equipment of appellant was obtained from a concern operating as "Jackson Shows" and that appellant employed a showman formerly connected with the operation of carnivals to superintend, and to a large extent manage appellant's business on the premises. It also employed other nonresidents in conducting its business who were professional traveling show people living in tents erected on the ground, or in trailers, many of which were also located thereon, and appellant's president himself frequently occupied one of the trailers both day and night, because of all of which he was asked by the court: "Q. And the whole thing is on wheels, that is why you have trucks," many of which appellant possessed. His answer was: "Yes sir." We, therefore, conclude that appellant's business was embraced by Ordinance 50, and the court correctly so held.

The remaining question relates to the validity of Ordinance No. 50, or rather the validity of the tax imposed because excessive, though correctly admitted to be a revenue one. But little space is needed in the disposition of this phase of the case. The exact question was before this court in the cases of Fiscal Court of Owen Co. v. F. & A. Cox Company, 132 Ky. 738, 117 S. W. 296, 21 L. R. A., N. S., 83; City of Louisville v. Pooley, 136 Ky. 286, 124 S. W. 315, 25 L. R. A., N. S., 582; Sperry & Hutchinson Co. v. City of Owensboro, 151 Ky. 389, 151 S. W. 932, Ann. Cas. 1915A, 373; Sallsbury v. Equitable Purchasing Co., 177 Ky. 348, 197 S. W. 813, L. R. A. 1918A, 1114; Ziedman & Pollie, Inc., v. City of Ashland, 244 Ky. 279, 50 S. W. (2d) 557. The last-cited case involved an ordinance of the City of Ashland levying a tax

of $1,500 per week for the privilege of operating a carnival within the city. Appellant therein paid the fee under protest and later sued the city to recover it upon the same ground urged in appellant's petition as rendering Ordinance No. 50 invalid. We sustained the right of plaintiff to recover based, of course, upon the ground that the fee was exorbitant, invalid and void, following the Pooley and other preceding cases.

Whilst some courts of the country disagree with this one in adopting the position it has taken, yet we do not stand alone as advocating the conclusion we have adopted since other courts approve it, especially so when the license fee exacted results in the taxed occupation earning no profit and frequently exceeding the receipts taken in from patrons. We do not mean to say that a concern coming within the taxed class and possessing but few attractions and meagerly equipped should furnish the measure for determining the validity of the levied tax. On the contrary, the excessiveness of the tax should be measured for such purpose by the receipts from average patronage of a similarly equipped concern engaged in such business, and which furnishes ground for classification of those engaged in like business wherein different gradations of fees might be imposed. While appellant was operating in the city of Louisville, it is shown that the fee of $200 per day exceeded the gross receipts on many of the operating days, and which clearly brings this case within the facts of the Pooley, Sallsbury, Ziedman and Pollie cases, supra. We, therefore, conclude that the court erred in sustaining the validity of Ordinance 50.

Wherefore, the judgment is affirmed so far as it held that appellant came within the purview of Ordinance 50; but it is reversed in so far as it held that Ordinance to be valid.

The Whole Court sitting.