## City Of Louisville et al. v. Sebree et al.

August 6, 1948.

As Extended on Denial of Rehearing October 12, 1948.

422

Gilbert Burnett and James W. Stites for appellants.

Lawrence S Grauman, Edwin C. Willis and Luther M. Roberts for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing in part, affirming in part.

The Board of Aldermen of Louisville has imposed an annual tax or license fee for the privilege of engaging in any business, occupation, calling, profession or labor within the city, with certain exceptions. The action taken is quite novel and revolutionary.

In this representative class suit, the several judges of the Jefferson Circuit Court disqualified themselves and the Honorable Amos H. Eblen of the Franklin County bar sat as a special judge. He held the ordinance to be valid with the exception of a section which exempted from its terms domestic servants employed in private

homes. The case is before us on an appeal and cross-appeal.

The major attack upon the ordinance stems from the fact that the measure of the tax is the earnings from the exercise of the privileges of engaging in the various activities, being one percent thereof. The validity of the ordinance is principally questioned upon the ground that it imposes an income tax in fact although it designates the tax as a license fee. But other important questions of constitutional and statutory validity are also raised.

Two broad classifications made by the ordinance for the measurement of the tax show its complete coverage. The tax is computed upon: "(a) all salaries, wages, commissions and other compensations earned by every person in the city for work done or services performed or rendered in the city; and (b) the net profits of all business, professions or other activities conducted in the city." "Business" is defined as an enterprise, activity, profession or undertaking of any nature conducted for gain or profit, whether conducted by an individual, co-partnership, association, or any other entity, but does not include boards of trade or other similar organizations operated exclusively for religious, charitable, scientific, literary, educational or civic purposes. The term "net profits" is declared to mean, "The net income from the operation of a business, or enterprise, after provision for all costs and expenses incurred in the conduct thereof, shall be the same as reported for federal income tax purposes excluding items exempted under this ordinance but without deduction of taxes based on income."

Provisions are made for the allocation of compensation and net profits where only a part is for or is the result of activities conducted in the city. Thus, the ordinance gathers within the sweep of its perimeter everybody who earns any money in any occupation, trade or profession or in the conduct of any business within the limits of the city and taxes them for the privilege according to the amount of their earnings or profits. Other provisions of the ordinance are thus summarized in the trial court's opinion: "The remaining sections of the ordinance provide for withholding of the license

fee by employers; the making of returns by those subject to the license fee, the enforcement of the ordinance by the Secretary-Treasurer of the Commissioners of the Sinking Fund, who is given authority to examine books, records and papers of employers; the levying of additional fixed sum license fees on certain activities; the enumeration of ordinances not repealed by this ordinance; and imposing penalties and providing for interest for failure to make a return or pay the fee when due. The usual severable clause is found at Section 17. Section 18 grants an exemption to domestic servants employed in private homes, while Section 19 declares that the ordinance shall remain in force and effect until and including June 30, 1950.''

Since a municipality's power to tax is only that which the legislature has granted it, and the legislature in granting the power must conform to constitutional limitations, we must first look to the authority of the Board of Aldermen for the particular action taken here.

Section 181 of the Constitution provides that the General Assembly may ''delegate the power to * * * cities * * * to impose and collect license fees on * * * franchises, trades, occupations and professions.''

By an Act of 1948 (Senate Bill No. 14) now KRS 92.281, the General Assembly provided:

''Cities of all classes are authorized to levy and collect any and all taxes provided for in Section 181 of the Constitution of the Commonwealth of Kentucky, and to use the revenue therefrom for such purposes as may be provided by the legislative body of the city.''

Expressions of legislative intent with respect to the construction to be given the Act include:

''This act shall also be subject to the provisions of Kentucky Revised Statutes section 91.200.''

At the same session, (Senate Bill No. 62) the legislature re-enacted that section of the statutes with new and different provisions as to the use of the revenues and with certain limitations not material in this case. KRS 91.200. Its purpose, apparently, was to permit the consistent exercise of the broad powers granted in S. B. No. 14. This Act of 1948 authorizes the Board of Alder-

men of a city of the first class (Louisville), among other things, to "provide for licensing any business, trade, occupation or profession * * * and fix in each case the license fee," excepting companies paying franchise taxes and banking institutions or in any other case where the city is prohibited by statute from imposing a license tax.

KRS 91.260 in part provides: "Each city of the first class shall raise a revenue from ad valorem taxes and from taxes based on income, licenses and franchises."

Other provisions relate to an annual tax on property, with which we are not now concerned.

Therefore, with respect to the objects or activities, the range or scope of the power of the City of Louisville to impose a license fee or occupational tax embraces all "trades, occupations and professions." In Hager v. Walker, 128 Ky. 1, 107 S. W. 254, 256, 32 Ky. Law Rep. 748, 15 L. R. A., N. S., 195, 129 Am. St. Rep. 238, it was said with respect to this language: "The authority to tax under this section is as far-reaching and as sweeping as language could make it. It would be difficult to find three words that cover wider fields of employment." See also Weyman v. City of Newport, 153, Ky. 487, 156 S. W. 109; R. J. Reynolds Tobacco Co. v. City of Lexington, 181 Ky. 503, 205 S. W. 592; Karnes v. City of Benton, 258 Ky. 425, 80 S. W. 2d 558; Mills v. City of Barbourville, 273 Ky. 490, 117 S. W. 2d 187.

We adopt the following from the opinion of the learned special judge as a full and complete response to the particular argument:

"The assertion that the Kentucky Constitution never contemplated that the common laborer would be subjected to a license tax must be rejected, as must also the argument that in order to be effectual a license must grant a privilege or give authority to do that which if done without a license would be illegal. The power to impose a license fee on trades, occupations or professions, which is authorized to be delegated, is without any language restricting or qualifying its exercise except that it be by general law. It must be concluded, therefore, that Section 181 of the Kentucky Constitution ex-

pressly authorizes the General Assembly to delegate to cities the power to impose license fees on those persons subjected thereto by this ordinance.

"It is further urged that the right to earn a livelihood is an inalienable right guaranteed by the Bill of Rights of the Constitution. Sections 1 and 2, Kentucky Constitution; Rawles v. Jenkins, 212 Ky. 287, 279 S. W. 350. That this is true may be conceded by all. However, the Bill of Rights does not operate to relieve from taxation as against an express grant of power such as is found in Section 181. At most it only affects the amount of the tax by prohibiting an unreasonable or arbitrary exaction. Hager v. Walker, supra; Lone Star Shows v. Commissioners of Sinking Fund of (City of) Louisville, 294 Ky. 114, 171 S. W. 2d 28, and cases cited therein."

Referring again to Section 181 and KRS 91.200 as amended and 91.260, the trial court continues:

"Thus, the power to impose license fees on trades, occupations and professions, which is delegated to cities of the first class by these sections, extends to all but the excepted activities stated in KRS 91.200, and as to all remaining activities is as comprehensive as the power expressly granted by Section 181. In accordance with the conclusion reached as to the scope of Section 181, it necessarily follows that the General Assembly has delegated to cities of the first class the power to require license fees of persons made subject thereto by this ordinance."

To this we may add the observation that the tax is not on the right to work or do the things but the doing of them in fact (cf. James v. Kentucky Refining Co., 132 Ky. 353, 113 S. W. 468), and that the legislative body of a municipality is free to exercise in its discretion the powers to be found within a grant or delegation of the state legislature when not offending a provision of the Constitution. Hager v. Walker, supra; Sallsbury v. Equitable Purchasing Co., 177 Ky. 348, 197 S. W. 813, L. R. A. 1918A, 1114. There is no inherent vice in the taxation of vocations, and business is as legitimate a subject of taxation as property. In re Watson, 17 S. D. 486, 97 N. W. 463, 2 Ann. Cas. 321. The city government provides services and contributes indispensable

benefits to the enterprise. Heretofore, vocations, professions and businesses of almost every kind and character have been specifically singled out for a license or occupation tax. Now all, with a few exceptions, are taken in with one fell swoop. The provisions of Section 181 of the Constitution, delegated by the General Assembly to the City of Louisville, permit such taxation.

The principal storm center of the controversy, as we have said, is whether or not this ordinance imposes an income tax, the taxpayers' argument being that the city has no authority to levy such a tax. We need not pass upon the question of the existence or absence of that power.

Confusion in the case may arise from placing so much emphasis on the measure of the tax as to subordinate or lose sight of its true character. The ordinance calls for "license fees for the privilege of engaging in Louisville in occupations, trades, professions, business and other activities." The privilege is to be "measured by the amount of salaries, wages, commissions, net profits and other compensation earned."

Specifically or technically speaking, to license means to confer on a person the right to do something which otherwise he would not have the right to do—a special privilege rather than a right common to all persons. It imports regulation. A "license fee" implies the imposition or exaction on the right to exercise a business privilege. That term is used exclusively in the ordinance, which also specifically deals with peddlers, poolrooms, taxicabs and other occupations commonly requiring a license. Such a "license fee" may be imposed either under the police power for the purpose of regulation or the taxing power for the purpose of revenue or both. 33 Am. Jur., Licenses, secs. 2, 7; Simrall v. City of Covington, 90 Ky. 444, 14 S. W. 369, 12 Ky. Law Rep. 404, 9 L. R. A. 556, 29 Am. St. Rep. 398; Commonwealth, etc,, v. Kelley, 229 Ky. 722, 17 S. W. 2d 1017. It is apparent that the present ordinance was enacted as a revenue measure. Since the levy is primarily for revenue, to speak with technical accuracy, the tax imposed is an "occupation tax." It lays a pecuniary burden for the support of the municipal government—the revenues being expressly allocated first to the sinking fund and

the balance to the general fund of the city. But the character of any tax is to be determined by its incidents, and the name by which it is described in the legislation imposing it is without significance. Dawson v. Kentucky Distillers & Warehouse Co., 255 U. S. 288, 41 S. Ct. 272, 65 L. Ed. 638, affirming J. & A. Freiberg Co. v. Dawson, D. C., 274 F. 420 "As implied by the name itself, an occupation tax being upon the right or privilege of carrying on a business, vocation, trade or calling, is not a property tax but a tax on the exercise of the right or privilege in the nature of a license or excise tax." Note, 103 A. L. R. 20. See Vol. 29, Words and Phrases, Perm. Ed., Occupation Tax.

It is true the scheme of taxation embodies features characteristic of the familiar income taxes; particularly in the exaction of a percentage of the monetary proceeds of labor, services or business and in its administrative provisions. It is likewise distinguishable in this connection from the ordinary licensing laws since it does not provide for the issuance of certificates, and it may be noted parenthetically that the Act of 1948, S. B. No. 62, repealed KRS 91.220 which provided for such certificates to licensees. Lending weight to the taxpayers' argument that it is an income tax is the fact that the ordinance is closely patterned after an ordinance of the City of Philadelphia, which was intended to be and sustained by the courts as an income tax, that city having the power to impose it. Dole v. City of Philadelphia, 337 Pa. 375, 11 A. 2d 163. Also, after a somewhat similar ordinance of the city of St. Louis, modeled from the Philadelphia ordinance, which was regarded by the courts as a "species of income or excise tax," and held not to be within the charter powers of that city which limited it to imposing property taxes and true licenses. Carter Carburetor Corporation v. City of St. Louis, 356 Mo. 646, 203 S. W. 2d 438. In each of those ordinances the imposition was of a withholding tax directly upon earnings or income derived from labor, services or business performed or done within the respective cities by either its residents or by nonresidents. Both cases were decided upon the construction of the respective special city charters.

This Louisville ordinance lays the tax upon the privilege of working and conducting a business within

the city, and only measures the value of the privilege by the amount of earnings or net profits. It is contended that this is but a subterfuge to avoid the absence of power and that, looking beyond the matter of form to the matter of substance, it is but an income tax. The definition or classification may be a matter of approach or point of view. Sometimes one may not see the woods for the nearby trees. The physchological impact loses force when emphasis is placed on what is made subject to taxation rather than on the measure of the tax and the basis of computation. Or if the word "receipts," which, in truth, is the more appropriate term, be used instead of "income." If graduated stated sums had been provided instead of a per centum of receipts or net profits, the source of such sums would in all probability have been the same. And that way of fixing the tax could scarcely be regarded as illegal. Cf. George Schuster & Co. v. City of Louisville, 124 Ky. 189, 89 S. W. 689. The sting of feeling that an unlawful tax has been imposed would then be eased by the recognition of certain legitimacy.

It is laid down in 27 Am. Jur., Income Taxes, Sec. 7:

"General income tax laws usually apply to net income rather than to gross income, and various exemptions and deductions are allowed from gross receipts in computing the amount of income upon which the tax must be paid. Although various types of taxes may be measured by gross receipts, or gross income, such taxes are usually not income taxes . . . Thus, franchise or privilege taxes on corporations are not income taxes, although measured by gross receipts or gross income. Likewise, occupation taxes or privilege taxes on those engaged in specified businesses, although measured by gross receipts, are not income taxes."

Section 181 of the Constitution, whose authority has been specifically delegated by the General Assembly to the city of Louisville (subject to other consistent statutes) prescribes no particular standard for measuring any tax. As stated in Moore v. State Board of Charities & Corrections, 239 Ky. 729, 40 S. W. 2d 349, 352; "The power of classifying taxes upon business according to the volume of business done has always been upheld by this Court." And that an occupation tax is measured

by the volume of the thing produced does not render it invalid. Cumberland Pipe Line Co. v. Commonwealth, 228 Ky. 453, 15 S. W. 2d 280. The point is that by analogy the basis is substantially the same. As to business, the basis is not the gross volume in dollars but the net profits, and for those who work for wages, salaries, fees and the like, the amount thereof is the basis for measuring the value of the privilege. The earnings or profits of a company are regarded as an important factor in the evaluation of franchises, and the tax is a per centum of that valuation. And KRS 91.260 quoted above, expressly authorizes Louisville to raise revenue from taxes "based on income, licenses and franchises," thereby showing that the legislature did not regard the use of income as a basis for taxation as constituting an income tax.

The question seems to have been quite definitely decided in Southern Building & Loan Association v. Norman, 98 Ky. 294, 32 S. W. 952, 953, 31 L. R. A. 41, 56 Am. St. Rep. 367, which holds that a tax of two per cent of the gross receipts of a foreign association was constitutionally proper as being for the valuable privilege of doing business in this state, the basis of receipts being, as it is said, "only the adoption of a fair and just standard." And an ordinance imposing a tax of $2.00 on every one hundred dollars of premiums received on business done within the city of Louisville was held to be valid in Fidelity & Casualty Co. v. City of Louisville, 106 Ky. 207, 50 S. W. 35, 20 Ky. Law Rep. 1785. Of like character is Northwestern Mutual Life Ins. Co. v. James, 138 Ky. 48, 127 S. W. 505.

We, therefore, hold the tax is not an income tax and that its imposition is within the powers of the city of Louisville.

Some of the parties to the suit conduct a retail jewelry store, and sue as representatives of their class. They argue that the ordinance violates the provision of section 181 of the Constitution (as it was amended in 1903) authorizing the General Assembly to empower cities to provide for taxation "on personal property, tangible and intangible, based on income, licenses or franchises in lieu of an ad valorem tax thereon." Also, KRS 91.-260, using similar language in delegating taxing power

to a city of the first class. It is conceded that the city cannot levy both a license tax based on income produced by a business using personal property and also an ad valorem tax on that property. The interpretation of this part of Section 181 by George Schuster & Co. v. City of Louisville, 124 Ky. 189, 89 S. W. 689, is that it gives the city the option of imposing a tax based on income, licenses or franchises in substitution of an ad valorem tax. It enables a substitution to be made but does not require that it be done as an alternative tax. The holding to the same effect in German Washington Mutual Fire Insurance Co. v. City of Louisville, 117 Ky. 593, 78 S. W. 472, 80 S. W. 154, has been embodied in the statutes. KRS 91.200, which provides that "The board of aldermen of each city of the first class, in addition to levying ad valorem taxes may, by ordinance * * * provide for licensing any business, trade, occupation or profession." See also Panke v. City of Louisville, 229 Ky. 186, 16 S. W. 2d 1034; Reeves v. Louisville Gas & Electric Co., 290 Ky. 25, 160 S. W. 2d 391. It is an important consideration in this case that the ordinance imposes a tax on the occupation of running the store and not a tax on the goods in stock to be sold. We do not think the point sustainable.

The circuit court held Section 18 of the ordinance invalid but that it could be eliminated under the separability clause without impairing the validity of the rest of it. It is as follows:

"Because of the great costs of administration and difficulty of collection involved, the following occupation is exempt from the terms of this ordinance and no license is required: Domestic servants employed in private homes."

The court ruled, "The exemption granted by section 18 cannot pass the test of reasonableness, or, to state it in other words, it is lacking in equality and uniformity."

The City has relied on Carmichael v. Southern Coal & Coke Co., 301 U. S. 495, 57 S. Ct. 868, 873, 81 L. Ed. 1245, 109 A. L. R. 1327, which sustained the constitutionality of the Unemployment Compensation Act of Alabama, one of the grounds of attack being that the exemption of domestic servants and a number of other classes

of employees rendered the act invalid for want of equality. The major exemption was of employers of fewer than eight employees and those employed for a brief stated period. Our Kentucky Act is substantially the same except as to the minimum number of employees. KRS 341.060, 341.070. Mr. Justice Stone wrote in this connection:

"Administrative convenience and expense in the collection or measurement of the tax are alone a sufficient justification for the difference between the treatment of small incomes or small taxpayers and that meted out to others."

He supported the conclusion with persuasive reasoning.

Here the only exempted class is "domestic servants employed in private homes." The reason for not applying that ground for the favored classification in the ordinance before us is thus stated by the trial court: "The administrative costs in the case of domestic servants would seem to be no different from that involved where the number of employees in a business is small. The difficulty of collection would appear to be a difficulty in ascertaining if the domestic servants and their employees were complying with the ordinance. The fact that some domestic employees might successfully escape the tax does not afford a rational basis for the exemption. Domestic labor is an occupation not different from many other laboring occupations subject to this license fee."

The question arises whether the ground stated in the ordinance for the exemption may be ignored if there are other sufficient grounds for it.

The will and intention of a legislative body, whether of the state or of a municipality, is the vital part of its enactment. It is a primary rule of statutory construction that significance and effect should, if possible, be accorded every part of an act and render it operative. Sometimes, however, it is not possible to give force and effect to every word and phrase used, and the courts are often justified in deleting incongruous or superfluous language in order that the legislative will shall be preserved. Minor details, nonessentials or subsidiary portions if found invalid will not render an act void.

Sutherland, Statutory Construction, Sec. 2405. The dominant purpose of the Board of Aldermen of Louisville was to exempt domestic servants employed in private homes from the imposition of the tax. Assigning a reason for doing so obviously was not necessary. It is not the legislation, and may well be disregarded as superfluous. Indeed, we have the express statement in Section 17 that: "If any sentence, clause, or section, or part of this ordinance, or the application thereof to any particular state of case is for any reason found to be * * * invalid," that fact shall not affect "any of the remaining provisions, sentences, clauses or sections or parts of this ordinance," the legislative intent being to enact each such part separately and independently of each other. We may, therefore, disregard the stated ground for exemption, and look to other grounds.

It is familiar law that the selection of subjects of classification for taxation founded upon a natural and reasonable basis, with a logical relation to the purposes and objectives of a statute or ordinance, does not offend the principle of equality or uniformity in the imposition of a tax of this character so long as it operates equally upon all of those within the class. Commissioners' of Sinking Fund of City of Louisville v. Weis, 269 Ky. 554, 108 S. W. 2d 515; Great Atlantic & Pacific Tea Co. v. Kentucky Tax Commissioners, 278 Ky. 367, 128 S. W. 2d 581; Louisville & Jefferson County Metropolitan Sewer District v. Joseph E. Seagram & Sons, 307 Ky. 413, 211 S. W. 2d 122.

It seems to us that the nature of the work and their relation to the home set apart domestic servants employed therein from any other class. Ordinarily, only one or two are so employed, and they are often regarded as members of the household. They are connected with the maintenance of the house and premises in such a way that their work and duties have to do with the running of the home and the ministering to the wants, comforts and conveniences of the members of the household. They are not engaged in industry or commercial activity, although, of course, they receive compensation for their services. Cf. Barres v. Watterson Hotel Co., 196 Ky. 100, 244 S. W. 308. We think substantial differences exist between this and other occupations. They justify its selection as a particular class to be relieved of the

occupational tax, even as domestic servants are exempted from the application of the Workmen's Compensation Act, KRS 342.005, and the Unemployment Compensation Act, KRS 341.050(5) (b). And it does not appear that the classification in those statutes has ever been questioned as offending the law of equality and uniformity.

The point is raised on the cross appeal that the ordinance offends the Fourteenth Amendment of the Constitution of the United States in that it denies equal protection and deprives the parties of due process. They argue discrimination; particularly that, on the one hand, the tax is on net proceeds of a business or practice of a profession but, on the other, on gross salaries and wages, without deduction of personal income or social security taxes. The contention relating to the exemption of domestic servants in private homes is reasserted here.

It may be that some who earn wages and salaries are put to an expense that could be regarded as occupational, such as transportation to and from work or special clothing and tools. No deduction is allowed anyone for personal income taxes. Probably the "net profits" of the business of employers or a personal profession and the gross wages or salaries of employees is as near to reaching the "take-home" pay as could be reasonably devised. The federal constitution does not demand absolute equality. As stated in Lawrence v. State Tax Commission, 286 U. S. 276, 52 S. Ct. 556, 559, 76 L. Ed. 1102, 87 A. L. R. 374:

"The equal protection clause does not require the state to maintain a rigid rule of equal taxation, to resort to close distinctions, or to maintain a precise scientific uniformity; and possible differences in tax burdens not shown to be substantial or which are based on discriminations not shown to be arbitrary or capricious, do not fall within constitutional prohibitions."

Neither due process or equal protection afforded by the federal constitution prohibits reasonable classification for purposes of taxation so long as there is a rational basis for it and all persons similarly circumstanced treated alike as determined from the practical operation of the taxing statute. Carmichael v. Southern

Coal & Coke Co., supra, 301 U. S. 495, 57 S. Ct. 868, 81 L. Ed. 1245, 109 A. L. R. 1327.

On the direct appeal of the City of Louisville and its officers from so much of the judgment as declared the exemption of domestic servants invalid, the judgment is reversed.

On the cross appeal of the taxpayers from the rest of the judgment upholding the ordinance, it is affirmed.

Judge Siler dissenting.

I now feel like writing a dissenting opinion.

Sometimes, dissenting opinions make ineffectual yet brave recordations and thus serve to bear torches of truth that time itself may not extinguish. For example, Caleb and Joshua made their dissenting opinion relative to the "Promised Land." The majority report, concurred in by ten men, was, of course, the authentic opinion of the organized body, but the dissenting opinion of Caleb and Joshua was a torch of truth that time never did extinguish. My present desire is to hold up that which I personally believe to be a torch of truth in this case.

When the subject was under our original consideration, I was not in full accord with the majority opinion even though I recorded no contrary vote on that occasion.

The proponents of the validity of this ordinance say, in general substance, that it constitutes an occupational tax levied on the privilege of doing business, such tax being merely measured by the yardstick of income.

However, aside from the question of whether it is an income tax, it appears to me that it is not a valid occupational tax way down in the woven fabric of its fundamentals. It occurs to me that there must be a vast difference between "doing business" on the one hand, and just earning a living in the "sweat of the face," on the other hand. Now the Brown Hotel of Louisville is certainly doing business there in that city and it should rightfully pay an occupational tax on such privilege of following that business. But its bell boys and chamber maids are not doing business, even though they are associated with an enterprise that in itself is surely doing

business. Those boys and maids are only following out the requirement of the Lord's mandate to Adam, namely, "In the sweat of thy face shall thou eat bread." To eat bread in the sweat of the face is much more of a necessity than a privilege. The time has come to distinguish between an occupational tax based on the theory of "doing business" and the activity of a person merely making a livelihood in the "sweat of the face." Even though an occupational business may be very humble, such as that of a one-chair barbershop or a one-horse dray, still it has an independent sovereignty that distinguishes it from the ordinary "sweat of the face" activity. The one is masterly though very humble. The other is servile though entirely honorable. There should be no privilege tax levied upon earning bread in a servile way, but such a tax should, I believe, be reserved exclusively for enterprises and professions and shops and individual activities performed in an unsupervised manner. A privilege of doing business is one thing. Earning a living is another. The first ordinarily encompasses the second. But the second need not encompass the first to any extent whatever.

And so, believing this ordinance and its broad burden of taxation to be illegal, I now dissent from the majority opinion.