COMMISSIONERS OF the SINKING FUND OF the CITY OF LOUISVILLE, the City of Louisville and the County of Jefferson, Appellants,

v.

ESTATE of Joe S. DOYLE et al., Appellees.

FLOYD STREET INVESTMENT CO. et al., Cross-Appellants,

v.

COMMISSIONERS OF the SINKING FUND OF the CITY OF LOUISVILLE et al., Cross-Appellees.

ALGONQUIN–IROQUOIS MANOR, INC., Cross-Appellant,

v.

COMMISSIONERS OF the SINKING FUND OF the CITY OF LOUISVILLE et al., Cross-Appellees.

Charles WEISBERG et al., Appellants,

v.

COMMISSIONERS OF the SINKING FUND OF the CITY OF LOUISVILLE, Appellees.

Court of Appeals of Kentucky.

Nov. 10, 1978.

As Modified on Denial of Rehearing Jan. 19, 1979.

Robert F. Matthews, John H. Stites, III, Louisville, Herman E. Frick, Asst. Director, City of Louisville Department of Law, Louisville, J. Bruce Miller, County Atty., Karl M. Walz, Asst. County Atty., Louisville, for appellants and cross-appellees, the Commissioners of the Sinking Fund.

J. Bissell Roberts, Kent McElwain, Louisville, for appellee and cross-appellant, Algonquin-Iroquois Manor, Inc.

Richard M. Trautwein, Carolyn M. Dye, Louisville, Marshall Hardy, Jr., Louisville, for appellees and cross-appellants, Floyd Street Inv. Co., et al. and the appellants Charles Weisberg, et al.

Before HOWERTON, REYNOLDS and WILHOIT, Judges.

HOWERTON, Judge.

This appeal results from litigation commenced in 1967 when appellants, the Commissioners of the Sinking Fund of the City of Louisville (hereinafter referred to as the "Fund"), brought suit against Joe S. Doyle to collect occupational taxes allegedly owing on income he earned by renting real

property. Shortly after that suit was filed, various other individuals, partnerships, and corporations intervened in the action in order to challenge the Fund's authority to collect occupational taxes on income from rental property. The intervenors sought a refund of occupational taxes levied and previously paid on net rental income and gain on the sale of real estate held for investment purposes, alleging it was unconstitutional for the Fund to attempt to collect the tax.

A partial summary judgment dismissing the intervenor's claim for a refund was entered on May 7, 1976. A separate appeal was prosecuted from that judgment, but the Supreme Court ordered it stayed pending the outcome of the other issues in the case.

The facts were stipulated by agreement of the parties, and the case was submitted to the trial court for a decision on the briefs. An opinion was rendered on August 11, 1976, in which the trial court held that "any attempt by the sinking fund to enforce payment of the occupational tax by *individuals* who hold rental property for the purpose of income is a violation of section 181 of the Constitution of Kentucky." (Emphasis supplied.) As to individuals, the Court also invalidated an administrative rule that exempted anyone from the license tax who devoted less than 30% of his time to the management or operation of the rental property. The trial court upheld the right of the Fund to collect the license tax from any corporation or partnership which stated that it was in the business of holding real estate for rental income or investment purposes.

The Fund contends that the trial court's judgment is erroneous in three respects. First, the Fund argues that individual income derived from the rental of real property is subject to the occupational license tax because it is from a business activity. Next, the Fund asserts the validity of its regulation which exempts from the tax individuals who devote less than 30% of their time to activities related to rental income and contends that the trial court erred in voiding it. Finally, the Fund alleges it was improper to award costs to the appellees who were denied a refund of license taxes previously paid on rental income.

The cross-appellants object to that portion of the judgment which sanctions the imposition of occupational taxes upon net rental income and gain realized on the sale of real estate owned by partnerships and corporations and held for investment purposes. They reason that rental income from real estate held for investment purposes is investment income not subject to occupational taxes regardless of whether the owner is an individual or a partnership or a corporation. They also contend that partnerships and corporations should pay no tax on income from any real property rentals, because the imposition of this tax on them, while exempting individuals, is discriminatory and in violation of sections 171 and 174 of the Kentucky Constitution. The cross-appellants also argue that in the enabling legislation for the occupational tax, the General Assembly specifically provided that the licenses would be issued and enforced on terms and conditions prescribed "by ordinance;" and, therefore, the Board of Aldermen exceeded its authority in delegating the power to issue rules and regulations to the Fund. They raise a similar argument with respect to the fiscal court's authority to designate someone other than the sheriff of Jefferson County to collect the occupational taxes levied pursuant to KRS 68.180. The Fund is the collector for the occupational licenses of both the City of Louisville and Jefferson County. Finally, the cross-appellants object to the Fund's regulation which requires all business entities to report all items subject to the federal income tax but which are exempt from the occupational tax. They contend that this requirement is offensive to the constitutional right to be free from governmental intrusion into one's privacy.

The authority of local government to levy occupational taxes on businesses, trades, oc-

cupations and professions can no longer be disputed. *City of Louisville v. Sebree,* 308 Ky. 420, 214 S.W.2d 248 (1948). The principal question is whether the holding of rental property for income is a business or merely an investment. If it is a business, then it necessarily follows that it will be subject to the tax. Our analysis of the activities involved in renting real property leads us to conclude that such activities may indeed be considered a business venture in most cases, but not necessarily in all.

An individual may be engaged in the "business" of renting real property just as a partnership or corporation may be in such a business. Partnerships and corporations are uniquely "business" organizations, however, and they may be presumed to be in some business. If their primary business is real estate rental, the license will be for that activity, but the fee will be based on the total net income. If the partnership or corporation is primarily in another type business, it must obtain a license for that activity, but base the fee on all income including rents or gains it realizes from real estate. A proprietorship may also have to include such income if it includes the rental income as part of the business activity. Otherwise, a license tax for an individual receiving income from rents or taxable gains on real estate will depend on whether or not it can be determined that the individual is in "business." The regulation specifically exempts individuals renting no more than two rooms, and the regulation does not presume that an individual is in "business" unless 30% of his time is devoted to the rental activity.

■ An individual may be involved in rental activity in such an insignificant way that it would be neither proper nor administratively feasible to subject such an individual to an occupational tax. For that reason, we believe that the Fund's regulation exempting individuals devoting less than 30% of their time to renting real property could be justified on the basis of administrative considerations alone. The court in

*Sebree, supra,* cited the following quotation from *Carmichael v. Southern Coal and Coke Co.,* 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245, 109 A.L.R. 1327 (1937):

> Administrative convenience and expense in the collection or measurement of the tax are alone a sufficient justification for the difference between the treatment of small incomes or small taxpayers and that meted out to others.

We can appreciate the dilemma of the trial judge when he considered the 30% requirement. Thirty percent (30%) of what time? The intervenors complained that the regulation was vague in that sense, but their actual objection was that it was discriminatory because it only applied to individuals and not to the partnerships and corporations. The rule had apparently been administered fairly among individual taxpayers, as no objections are known; but the regulation's future might be more secure, if challenged, if specific guidelines were adopted to aid in applying the rule. There was no real controversy over the legality of the rule.

Some rule is necessary to exclude those individuals who truly are not in "business," but who have merely invested some savings in rental property and who devote little or no time or effort to "managing" the property. Until some real controversy is raised challenging the administration of the 30% rule, we will consider it a reasonable method of excluding individuals with rental property who should not or need not be considered to be in business. It should also be noted that the 30% rule merely creates a presumption of engaging in a business activity rather than simply investing money for production of income. If the presumption is applied, it may be rebutted.

■ We are not persuaded that the failure to include partnerships and corporations in the 30% rule results in an unconstitutional discrimination against partnerships or corporations. Kentucky Courts have consistently held that corporations and individ-

uals may be placed in different categories for tax purposes without violating constitutional limitations. *Square D. Company v. Kentucky Board of Tax Appeals,* Ky., 415 S.W.2d 594 (1967). We see no reason this rule should not apply to partnerships as well.

■ The General Assembly specifically directed that the occupational tax is to be computed at a percentage of the net profits of businesses, trades, and occupations. KRS 91.200(1)(b). We have little difficulty in concluding that the legislature intended net profits to include all activities which generate income for a business. If business income is generated by renting real estate, we see no reason why it should be excluded from the net profit figure on which occupational tax is based.

Similar reasoning convinces us that gain realized on the sale of rental real property should be treated no differently than gain on the sale of any other business asset. It seems clear that gain on the sale of assets is a natural part of the earnings an individual, a partnership, or a corporation derives from a business and, as such, should be subject to the license tax in the same manner and to the same extent as capital gains are considered to be taxable income for federal taxes.

We see little merit in the argument advanced by the cross-appellants that the Board of Aldermen improperly delegated to the Fund the authority to promulgate and enforce rules and regulations pertaining to the license tax. The power delegated to the commissioners is that of making rules for enforcing the license tax ordinance, and we are unable to agree with the cross-appellants' assertion that legislative responsibility has been illegally delegated, simply because the commissioners issued regulations in furtherance of that objective.

Furthermore, in order to dispel any future question as to whether the regulations promulgated by the Fund are "by ordinance," it might be well for the Board of Aldermen to treat the regulations as recommendations and then validate the recommendations by adopting them as part of the licensing ordinance. We hasten to add, however, that such action, or lack of it, by the Aldermen in no way affects our decision here.

■ Cross-appellants' second argument with respect to improper delegation is that the fiscal court exceeded its authority in designating the Fund as the collecting agency for the county's occupational tax, because the Sheriff of Jefferson County is the statutory collector of all county taxes. We find KRS 68.185 to be dispositive of this contention. KRS 68.185 provides:

> The fiscal court of said counties may provide for the levy, the assessment and *the collection of the license fees* authorized by KRS 68.180 and 160.482 to 160.488, provide for the issuance and enforcement of licenses, and specify the county governmental purposes to which the revenue derived from the license fees authorized by KRS 68.180 shall be applied. (Emphasis added)

We are satisfied that providing for the assessment and collection of the license fees may be accomplished by delegating that authority to the Fund.

■ The cross-appellants' final argument is that the regulation imposing on business entities subject to the licensing ordinance the duty to register and give information as to items subject to the federal income tax but exempt from the occupational tax represents an unconstitutional exercise of absolute and arbitrary power. We do not believe that this argument can succeed, especially in view of the fact that the requirement is rationally related to a legitimate need of the Fund to have accurate information upon which to base the license fee, and the fact that the regulations provide a penalty for violation of the confidential nature of the returns. (See Article V–6 of the License Fee Regulations of the Sinking Fund of Louisville.) Although we fail to

see any advantage in so doing, we would not prohibit any licensee from having the option of determining its occupational tax liability on the sole basis of the net federal income tax without disclosing any items which may be deducted from the license tax.

Finally, in our opinion, it is not necessary for us to decide the question of whether costs were properly awarded. However, as this case is to be remanded to the trial court, we believe it appropriate that the trial judge reconsider the issue of costs in light of the fact that the Fund has ultimately prevailed on all issues.

Because of the results reached herein, the issues presented in Appeals # CA–1949–MR and # 78–CA–47–MR require no further determination by this court. Those appeals are, therefore, dismissed. The rights of any individual licensee in the two actions are amply protected by the rulings in this opinion. Refunds shall be considered for anyone who protected his right to a refund by purchasing the license under protest and who is entitled to an exemption under the 30% rule or other provision of the ordinance, whether by stipulation or proven

fact, provided the protest and challenge were timely presented to the Fund before any attempt was made to intervene in this action.

Insofar as the judgment of the circuit court upholds the authority of the Fund to collect occupational taxes from partnerships and corporations engaged in renting real property, it is affirmed.

Insofar as the judgment below exempts individuals engaged in renting real estate from any liability for occupational taxes and invalidates the Fund's 30% rule, it is reversed and remanded for entry of a judgment consistent with this opinion.

All concur.