MEDICAL PERSONNEL POOL OF LOUISVILLE, INC. and Personnel Pool of Central Kentucky, Inc., Medical Personnel Pool of Lexington, Appellants,

v.

MANAGEMENT REGISTRY, INC., Spaid Nursing Service, A Division Thereof; Interim Office of Health Planning and Certification (Successor To Commission for Health Economics Control in Kentucky), William R. Hourigan (Member), Jack F. Waddell (Member), Edward A. Wilson (Member); American Nursing Care, Inc.; National Health Industries, Inc.; and House Calls of America, Inc., Appellees,

and

INTERIM OFFICE OF HEALTH PLANNING AND CERTIFICATION (Successor to Commission for Health Economics Control in Kentucky), Appellant,

v.

MANAGEMENT REGISTRY, INC., Spaid Nursing Service, A Division Thereof, Appellee.

Nos. 92–CA–000924–MR, 92–CA–000967–MR.

Court of Appeals of Kentucky.

March 12, 1993.

Discretionary Review Denied and Opinion Ordered Published by the Supreme Court Jan. 25, 1994.

Lisa English Hord, McBrayer, McGinnis, Leslie & Kirkland, Lexington, for appellants No. 92–924.

John H. Gray, Frankfort, for appellant, Interim Office of Health Planning and Certification No. 92–967.

Maria Alagia Cull, Alagia, Day, Marshall, Mintmire & Chauvin, Frankfort, for appellee, Management Registry, Inc. and Spaid No. 92–924 and 92–967.

John H. Gray, Frankfort, for appellee, Interim Office of Health Planning and Certification No. 92–924.

Robert B. Craig, Taft, Stettinius & Hollister, Cincinnati, for appellee, American Nursing Care, Inc. No. 92–924.

Jonathan D. Goldberg, Louisville, for appellee, National Health Industries, Inc. No. 92–924.

William Yarmuth, Louisville, Company Representative for appellee, House Calls of America, Inc. No. 92–924.

Before LESTER, C.J. and GUDGEL and WILHOIT, JJ.

*OPINION*

LESTER, Chief Judge.

This is an appeal from the trial court's opinion and judgment which reversed, set aside and held for naught the final decision of the Commission for Health Economics Control in Kentucky (CHECK).

Spaid Nursing Services, a division of Management Registry, Inc., operates a private duty nursing service and is also licensed as a nursing pool. The present conflict arose when a competitor of Spaid went to CHECK for a determination of whether it was proper for Spaid to send nurses into patients' homes without a Certificate of Need (CON). CHECK ruled that it was not and a CON was required. Spaid was given thirty (30) days in which to request a public hearing to be conducted by CHECK if it disagreed with the determination. Spaid did just that and a hearing was held.

The hearing report was adopted in full by CHECK. It concluded that Spaid Nursing Service was "required by KRS 216B.061 to obtain CON to establish a health service, which provides private duty nursing service to patients in their homes and is further ordered to cease and desist from providing this service until a CON and appropriate license are obtained." Spaid was then afforded the option of requesting a reconsideration hearing if such was called for, KRS 216B.090, or appealing the decision of CHECK by filing a petition for review in the Franklin Circuit Court. KRS 216B.115.

The matter was appealed and the Franklin Circuit Court ultimately reversed and held for naught the decision of CHECK. Thereafter, both Spaid's competitors and CHECK appealed the case to the Court of Appeals and the two cases were consolidated. Both appellants argue that the trial court erred upon finding that Spaid was not acting in dereliction of the statutes and regulations. We agree and reverse the trial court.

Chapter 216B concerns Licensure and Regulation of Health Facilities and Services. KRS 216B.010 explains:

The general assembly finds that the licensure of health facilities and health services is a means to insure that the citizens of this Commonwealth will have safe, adequate and efficient medical care; that the proliferation of unnecessary health care facilities, health services and major medical equipment results in costly duplication and underuse of such facilities, services and equipment; and that such proliferation increases the cost of quality health care within the Commonwealth. Therefore, it is the purpose of this chapter to provide for the establishment of the commission for health economics control in Kentucky for the purpose of acting on applications for certificates of need.[1]

KRS 216B.061 provides:

(1) Unless otherwise provided in this chapter, no person shall do any of the following without first obtaining a certificate of need:

(a) Establish a health facility;

(b) Obligate a capital expenditure which exceeds the capital expenditure minimum;

(c) Make a substantial change in the bed capacity of a health facility;

(d) Make a substantial change in a health service;

(e) Make a substantial change in a project;

(f) Acquire major medical equipment;

(g) Alter a geographical area or alter a specific location which has been designated on a certificate of need or license;

(h) Transfer an approved certificate of need for the establishment of a new health facility or the replacement of a licensed facility.

\*    \*    \*    \*    \*    \*

902KAR20.006 (renumbered 1992—902KAR20.004) regulates the certificate of need process. To further explain the mean-

1. Following the filing of the notices of appeal Executive Order No. 92–419 abolished the Commission for Health Economics Control. All health planning functions and authority currently exercised by units or agencies attached to or within the Cabinet for Human Resources were transferred to the Interim Office of Health Planning and Certification.

ing behind the various statutes KRS 216B.015 defines significant terms as follows:

(7) "Certificate of need" means an authorization by the commission to proceed to acquire, to establish, to offer, to substantially change the bed capacity, or to substantially change a health service as covered by this chapter.

\* \* \* \* \* \*

(11) "Health facility" means any institution, place, building, agency, or portion thereof, public or private, whether organized for profit or not, used, operated, or designed to provide medical diagnosis, treatment, nursing, rehabilitative, or preventive care and includes alcohol abuse, drug abuse, and mental health services. This shall include, but shall not be limited to, health facilities and health services commonly referred to as hospitals, psychiatric hospitals, physical rehabilitation hospitals, chemical dependency programs, tuberculosis hospitals, skilled nursing facilities, nursing facilities, nursing homes, personal care homes, intermediate care facilities, family care homes, primary care centers, rural health clinics, outpatient clinics, ambulatory care facilities, ambulatory surgical centers, emergency care centers and services, ambulance services, nonemergency health transportation services, hospices, community mental health and mental retardation centers, home health agencies, kidney disease treatment centers and freestanding hemodialysis units, health maintenance organizations, and others providing similarly organized services regardless of nomenclature.

(12) "Health services" means clinically related services provided within the Commonwealth to two (2) or more persons, including, but not limited to, diagnostic, treatment, or rehabilitative services, and includes alcohol, drug abuse, and mental health services.

KRS 216B.020(1) exempts certain facilities from requiring the issuance of a certificate of need. It exempts "private duty nursing services licensed as nursing pools." *Id.* The statute further provides that the listed facilities or services which are exempt "shall be subject to licensure, when applicable." *Id.*

Unfortunately the Legislature has failed to define private duty nursing services. However, nursing pools are defined in Chapter 216—Health Facilities and Services.

KRS 216.860 defines various terms as they are used in KRS 216.865, including "nursing pools":

(4) "Nursing pools" means any person, firm, corporation, partnership, or association engaged for hire in the business of providing or procuring temporary employment in health care facilities for medical personnel including, but not limited to, nurses, nursing assistants, nurses' aides, and orderlies. For purposes of KRS 216.-865, nursing registries shall be considered to be nursing pools. Excluded from this definition are any health-facility-based or in-house pools established to provide services within the confines of such facility or business, any person who only engages in providing his or her own services on a temporary basis to health care facilities, and home health agencies licensed pursuant to KRS Chapter 216 which provide or procure temporary employment in health care facilities for medical personnel.

KRS 216.865(1) mandates that "no nursing pool shall be operated, maintained, or advertised without obtaining a license as provided in this section." KRS 216.865(2) provides that "the secretary shall adopt administrative regulations relating to license fees, standards of care and service, and procedures for enforcement of penalties."

With the applicable statutes laid out, we will now address the specific issue brought upon appeal. Spaid Nursing Services sent the nurses working in its private duty nursing service to various patients' homes without first obtaining a CON. It did. so in reliance upon the exemption contained in KRS 216B.020. The Franklin Circuit Court found that the statute was clear on its face and the Legislature indeed intended for the exemption to mean exactly what it said. According to the trial court CHECK was in error when it read into KRS 216B.020(1) the condition that the private duty nursing service must be acting within the confines of the definition of a nursing pool.

We find that the Franklin Circuit Court reads too much into the exemption. As CHECK found, the key to the exemption must center upon the very nature of a nursing pool. Nursing pools provide temporary employment in health care facilities. The definition does not include employment in patients' homes. Hence, the temporary personnel is being provided for an already established health facility whose people in authority oversee the nursing pool personnel. It follows that a private duty nursing service licensed as a nursing pool is entitled to the exemption to the extent that it is acting within the confines of the definition of a nursing pool.

To hold otherwise would nullify the exemption's requirement that the service must be licensed as a nursing pool. Although there is no applicable statute which defines "license," the Court in *City of Louisville v. Sebree*, 308 Ky. 420, 214 S.W.2d 248 (1948) stated:

> Specifically or technically speaking, to license means to confer on a person the right to do something which otherwise he would not have the right to do—a special privilege rather than a right common to all persons. It impacts regulation. 214 S.W.2d at 253.

This meaning is further supported by 906KAR1:050 Section 1(4) which defines license to mean "an authorization issued by the Cabinet for the purpose of operating a nursing pool." Provided the private duty nursing service is licensed as a nursing pool it has those rights and only those rights conferred upon a nursing pool.

Although the trial court may find it redundant not to, there is no reason to read into the exemption that private duty nursing services are free to act outside the scope of their license. To add to that, to further allow the private duty nursing service to do what other agencies have to acquire a CON for before they act would not logically be something the Legislature would do. One must not forget the reason why the various restrictions are mandated. *See* KRS 216B.010.

We should also point out that appellee not only argues that KRS 216B.020(1) plainly and specifically exempts private duty nursing services it maintains that the Commission's decision is based upon Commission Policy 87–7 which violates the mandates of KRS 13A in that the policy was not in the form of an administrative regulation. Nowhere in the hearing report which was adopted in full by CHECK can we find any reliance upon Commission Policy 87–7. This argument has no merit. Appellee also argues that the Commission's determination procedure is without statutory authority. This argument also has no merit. *See* KRS 216B.040.

The trial court is reversed with directions to affirm and reinstate the decision of CHECK.

All concur.