**SMITHKLINE BEECHAM CORPORATION, Appellant,**

v.

**REVENUE CABINET, Commonwealth of Kentucky, Appellee.**

No. 1998–CA–002415–MR.

Court of Appeals of Kentucky.

Jan. 19, 2001.

Rehearing Denied March 16, 2001.

Bruce F. Clark, Jennifer Robinson Proud, Frankfort, KY, for Appellant.

Michael D. Kalinyak, Frankfort, KY, for Appellee.

Before COMBS, EMBERTON and GUIDUGLI, Judges.

## OPINION

EMBERTON, Judge:

The Franklin Circuit Court affirmed an order of the Kentucky Board of Tax Appeals which found that the SmithKline Beecham Corporation's distribution of free drug samples to physicians for dispensing without charge to patients was a taxable use under Kentucky Revised Statutes (KRS) 139.310, and that the distributions were not exempt from the tax pursuant to KRS 139.472.

SmithKline, a Pennsylvania corporation, purchases and manufactures drugs and distributes samples of those drugs to physicians and veterinarians through sales representatives who live and work in Kentucky. It is the responsibility of the sales representatives to store, account for, and distribute the samples to medical practitioners in a manner consistent with SmithKline's policies. The samples, all of which would require a prescription if purchased from a pharmacist, are then provided free of charge by the physician to patients for use after leaving the physician's office.

As a result of a sales and use tax audit on SmithKline for the period from April 1, 1988, through December 31, 1991, the Cabinet determined that SmithKline's distribution of the medicine samples is subject to use tax and is not exempt under KRS 139.472. A use tax assessment was then made against SmithKline in the amount of $52,978, plus interest.

▮▮▮▮ The applicable standard of proof and rules of statutory construction in taxa-

tion cases are set forth in *Revenue Cabinet, Commonwealth v. Gaba:* [1]

It is well settled that in the construction and interpretation of administrative regulations, the same rules apply that would be applicable to statutory construction and interpretation. A court may not interpret a statute at variance with its stated language. Further, although in general, tax statutes are to be strictly construed in favor of the taxpayer, in cases of statutory exemptions from taxation, the converse is true. In cases of statutory exemption construction, ambiguities must be strictly construed against the taxpayer. (Citations omitted).

The issues before us are: Applying these stated general rules, is SmithKline's distribution of free samples subject to a use tax under KRS 139.310; and if so, do the medicine samples, so distributed, fall under the provisions of KRS 139.472 for exemption of prescription drugs from use tax?

Although we find the criteria of KRS 139.310 are met that subject SmithKline to the use tax, we find that the samples are prescription medicines and are exempt from the use tax by virtue of KRS 139.472.

KRS 139.310 provides:

An excise tax is hereby imposed on the storage, use, or other consumption in this state of tangible personal property ... for storage, use, or other consumption in this state at the rate of six percent (6%) of the sales price of the property.

A use occurs when the taxpayer exercises any right or power which is incident to the ownership of property in Kentucky.[2]

▮▮▮▮ The Cabinet argues that SmithKline uses the drug samples in this state

---

**1.** Ky.App., 885 S.W.2d 706, 708 (1994).

**2.** KRS 139.190.

to promote its business and that it exercises control over the storage and disbursement of the drugs in a manner consistent with ownership. It is beyond dispute that SmithKline disburses the samples free of charge expecting an economic benefit. Although SmithKline attempts to persuade this court that the term "use" cannot be defined so broadly as to mean "distribute", we find that the terms are so similar that the legislature did not deem it necessary to include the term "distribution" in the statute. As stated by the court in *Service Merchandise Co., Inc. v. Arizona Dept. of Revenue,*[3] when interpreting an Arizona use tax statute:

It is true that our statute does not specifically mention distribution. However, it would be redundant to do so in light of Arizona's broad definition of "use." Arizona law defines use as "the exercise of any right or power over tangible personal property incidental to owning the property...." Because distribution is a right incidental to ownership, it was unnecessary for the Legislature to specifically include in it the definition of "use." (Citations omitted).

In part because the drug industry is heavily regulated, SmithKline, after sending samples to its representatives, strictly controls the storage and distribution of the samples. The representative must verify all samples received and store them in a cabinet or other facility approved by a SmithKline district sales manager. The inventory kept by each representative is closely monitored, and the representative is required to make weekly reports. Damaged or obsolete samples must be returned to SmithKline, and SmithKline controls to whom, and what type, samples are distributed. Accordingly, we find that the Cabinet clearly established that SmithKline uses the product it ships to Kentucky, and that it exercises control over it, evidencing continued ownership of the product.

We also have little difficulty in finding that the drug samples were stored within the Commonwealth by SmithKline. Under KRS 139.150(1), "storage" includes "any keeping or retention in this state for any purpose except sale in the regular course of business...." SmithKline requires that its representatives follow strict guidelines when storing samples in Kentucky. The location and conditions under which the samples are kept is specified, and annual audits are conducted to assure compliance. It is neither absurd nor unreasonable to conclude that SmithKline stores the samples within the state.

The contention that the drug samples are manufactured and not purchased by SmithKline is without merit in light of its stipulation that the drugs were purchased for distribution to physicians in Kentucky.

In SmithKline's second line of defense it maintains that even if distribution of the samples is a taxable use, it is exempt from taxation under KRS 139.472, which provides that the terms "use," "storage" and "consumption" as used in KRS 139.310 shall not include the sale, use, storage, or consumption of prescription medicine. Prescription medicine includes:

Any substance or preparation intended for use by external or internal application to the human body in the diagnosis, cure, mitigation, treatment or prevention of disease and which is commonly recognized as a substance or preparation intended for such use which is prescribed for the treatment of a human being by a person authorized to prescribe the medicines and dispensed on

3. 188 Ariz. 414, 937 P.2d 336, 339 (App. Div. 1, 1996).

prescription by a registered pharmacist in accordance with law.... [4]

. The medicine distributed by SmithKline is for use in the diagnosis, cure, mitigation, treatment, or prevention of disease and the parties have stipulated that all the medications are commonly recognized as ones obtained through a medical prescription. The Cabinet's contention, however, is that the nature of the medicine is not the determinative factor under KRS 139.472. Rather, it argues, the statute requires that the medication be actually dispensed by a registered pharmacist. The free samples distributed by Smith-Kline are not so dispensed and, in fact, if they reach the patient they are dispensed directly by the physician.

■■■ A fundamental rule of statutory construction is to determine the intent of the legislature.[5] And, any language used by the legislature must be given its clear and commonly accepted meaning.[6] Clearly, the intent of the legislature in enacting the prescription medicine exemption was to lighten the burden of high medical costs on the indigent and elderly people. Smith-Kline distributes its medicines free of charge and the medicine is then dispensed, free of charge, by physicians to the patients. In light of the legislative intent, it seems unreasonable to construe KRS 139 .472 so as to tax SmithKline for the distribution of the samples. Ultimately, Smith-Kline and companies who engage in similar practices could conclude that the economic benefit of offering the samples is outweighed by the tax consequences.

The Cabinet argues that, since KRS 139.472 is a tax exemption statute, it must be strictly construed against the taxpayer.[7] We cannot use the rule of strict construction, however, to impose a tax burden where the legislature has granted an exemption. Furthermore, as stated in *Barnes,* if there is "a doubt as to the meaning of the statute, such doubt should be resolved in favor of the taxpayer...." [8]

We believe the statute is clear and the phrase "commonly recognized" in KRS 139.472 is a modifier to the remainder of the sentence. The medication is exempt if it is a medicine that is commonly recognized as one which is prescribed for the treatment of a human being and commonly recognized as one that would be dispensed by a registered pharmacist in accordance with law. It is the nature of the medicine, not the manner in which it is actually dispensed, that qualifies it as a prescription medicine.

We do not find our holding inconsistent with this court's prior holding in *Gaba*. The issue in *Gaba* was whether a physician who injected drugs into his patients was dispensing or supplying prescription medicine within the meaning of 103 KAR 26:020(2) and KRS 139.472. The court's holding was that:

[W]e adjudge that administering defined prescription medicine by injection is not equivalent to supplying or dispensing medicine. Therefore, since it is undisputed that Gaba injected all the drugs and medicine into his patients and none of the medication in question was provided by Gaba to his patients to be taken outside of his office and adminis-

4. KRS 139.472(1)(a).

5. *Commonwealth v. Allen,* Ky., 980 S.W.2d 278 (1998).

6. *Barnes v. Department of Revenue,* Ky.App., 575 S.W.2d 169 (1978).

7. *Revenue Cabinet v. Gaba,* Ky., 885 S.W.2d 706 (1994).

8. *Barnes* at 172.

tered by the patient, we believe that the transactions are not exempt from the sales and use tax pursuant to KRS 139.472 and 103 KAR 26:020(2).[9]

Whether the medicine had to be dispensed by a pharmacist was not the issue. In fact, in *Gaba*, the medication was not dispensed to the patient at all but was administered directly by the physician. Therefore, we do not find our decision at odds with the *Gaba* decision.

The order of the Franklin Circuit Court is reversed.

ALL CONCUR.