GEORGETOWN MUNICIPAL WATER AND SEWER SERVICE and City of Georgetown, Appellants,

v.

BUR–WAL, INC. and Bluegrass Ventures of Georgetown, LLC, Appellees.

No. 2006–CA–000278–MR.

Court of Appeals of Kentucky.

June 15, 2007.

Discretionary Review Denied by Supreme Court Feb. 13, 2008.

---

**4.** There was never any settlement of the estate    of Buck Combs.

R. Bruce Lankford, Charles Perkins, Georgetown, Phillip M. Moloney, Lexington, KY, for appellant.

Stewart Burch, Frankfort, KY, for appellee.

Before LAMBERT, MOORE and NICKELL, Judges.

## OPINION

MOORE, Judge.

Appellees Bur–Wal, Incorporated and Bluegrass Ventures of Georgetown, LLC (the developers) filed separate actions in Scott Circuit Court seeking declaratory judgments and damages from Appellants Georgetown Municipal Water & Sewer Services (GMWSS) and the City of Georgetown for costs the developers incurred installing water and sewer utility lines within the boundaries of a residential subdivision located within the service area of GMWSS. The two actions were later consolidated. The circuit court entered an Order and Opinion granting the relief sought by the developers, ordering GMWSS and the City to reimburse the Appellees, from the collections of fees by GMWSS for connections or tap-on to the lines by homeowners, until Appellees were fully reimbursed for the cost of extensions to the water and sewer lines in excess of one hundred feet. At the time of the hearing, this amount was $230,800.00. It is from this Order and Opinion that GMWSS and the City appeal. Upon review, we hereby affirm in part and reverse in part.

## I. FACTUAL BACKGROUND

GMWSS is a utility owned by the City of Georgetown. GMWSS is responsible for the management and maintenance of the water and sewer utility service and infrastructure within its defined territory in Scott County, Kentucky. The Appellees/developers developed two parcels of property for residential communities for the purpose of making a profit in Scott County, wherein the water and sewer utilities were served by GMWSS.

Appellee Bur–Wal, Incorporated, developed a parcel of property known as Unit 5 of The Colony Subdivision. Bur–Wal installed 9,088 linear feet of sewer line and 6,300 linear feet of water line for the subdivision. The cost of installing the sewer line was $330,000.00, and the cost for installing the water line was $90,000.00. Upon completion of the project, GMWSS assumed ownership of the lines on February 7, 1997.

Bluegrass Ventures, LLC, also developed property for the purposes of establishing a residential subdivision in Scott County, known as Unit 6 of The Colony Subdivision. Bluegrass Ventures installed 5,018 linear feet of sewer line at a cost of $138,000.00 and 6,400 linear feet of water line at a cost of $99,000.00. GMWSS assumed ownership of the lines on May 24, 1999.

The developers concede that installation of these utility lines was necessary before they could sell any lots on which homes could be built. Although the developers put the projects out to bid, they were not subject to any public bid requirements that

public entities must undertake to comply with the law.[1] Moreover, it is not apparent from the record that the developers were required to pay prevailing wage to the contractors who installed the lines, as GMWSS and the City maintain they are required to do on public projects.

It is undisputed that the developers did not pay to GMWSS, the utility in question, the cost of extending the lines. Rather, the cost of the installation of the utility lines was paid directly from the developers to the contractors, with whom the developers exclusively negotiated and ultimately hired. The record is clear that neither GMWSS nor the City had any part in the bid process, the selection of the contractors, or any facet of the project.

The developers did properly seek the requisite approval from GMWSS and the City to ensure that the utility lines conformed to established standards and codes and were compatible with the existing water and sewer infrastructure. However, the developers never entered into a contract with GMWSS and the City regarding the payments of the lines, and the developers never requested the same at the time they sought and received approval for the project. Importantly, neither GMWSS nor the City requested that the developers install the lines on their behalf. Nothing in the record evidences that had the developers sought payment for the installation of the lines prior to approval of their projects, that GMWSS or the City would have given their approval for the projects or agreed to supply the development with water and sewer service.

Bur–Wal obtained approval from the City, the Georgetown–Scott County Planning Commission (GSCPC) and GMWSS of its Final Subdivision Plan for Unit 5 on November 10, 1995, and the Final Subdivision Plan was recorded in the Scott County Clerk's office on November 16, 1995. The approving certificate contained on the final plat referencing the available capacity for water service states as follows:

> I hereby certify that Georgetown Municipal Water & Sewer Service (GMWSS) has the capacity within the water distribution system to supply The Colony Unit 5 with water services. Provision of water service will be contingent upon the review and approval of all on-site and off-site plans and specifications for the proposed system, construction of the water distribution system by/at the cost of the developer, built to GMWSS approved specifications and approval by the GMWSS of the as-built improvements and/or bonding amount.

(Capitalization changed).

Regarding available capacity for sewer service, the approving certificate cites in relevant part as follows:

> I hereby certify that Georgetown Municipal Water & Sewer Service (GMWSS) has the capacity within the sewer connection system to supply The Colony Unit 5 with sewage disposal services. Provision of service will be contingent upon the review and approval of all on-site and off-site plans and specifications for the proposed system. Construction of the sewer collection system by/at the cost of the developer, built to GMWSS approved specifications and approval by GMWSS of the as-built improvements and/or of the bonding amount.

(Capitalization changed).

Pursuant to the section of the approving certificate entitled "CERTIFICATE OF OWNERSHIP AND DEDICATION," the

---

1. GMWSS and the City do not specifically cite to statutory public bid mandates in their brief. However, at oral argument counsel for GMWSS and the City cited to the Kentucky Model Procurement Code, Kentucky Revised Statutes (KRS) 45A.005 *et seq.*

owners of the property, Ron Walpert, Greg R. Meyer, Fred W. Burch, III, signed the following:

> I hereby certify that I am the owner of the property shown and described hereon and that I hereby adopt this plat/plan of the development of my own free consent, establish the minimum building restriction lines, and dedicate all streets, alleys, walks, parks, and other open spaces to public or private use as shown, in accordance with the Georgetown–Scott County Subdivision and Development Regulations, unless otherwise noted.

(Capitalization changed).

Bluegrass Ventures obtained approval from GMWSS and the GSCPC of its Final Subdivision Plan for Unit 6 on September 3, 1997, and September 10, 1997, respectively, which was recorded in the Scott County Clerk's office on September 11, 1997. Regarding sewer service, the approving certificate on the final plat for this unit provides in relevant part as follows:

> I hereby certify that Georgetown Municipal Water & Sewer Service (GMWSS) has reviewed the plan and specifications for the proposed sewage system for The Colony Unit 6, that the sewage system of said development meets the requirements of this agency, and that Georgetown Municipal Water & Sewer shall supply said development with sewage disposal services.

(Capitalization changed).

As to water service, the approving certificate provides in relevant part as follows:

> I hereby certify that Georgetown Municipal Water & Sewer Service (GMWSS) has reviewed the plans and specs for the proposed water distribution system for The Colony Unit 6, that Georgetown Municipal Water & Sewer Service shall supply said development with water services.

(Capitalization changed).

The owners of Unit 6 signed the "CERTIFICATE OF OWNERSHIP AND DEDICATION," providing as follows:

> I hereby certify that I am the owner of the property shown and described hereon and that I hereby adopt this plat/plan of the development of my own free consent, establish the minimum building restriction lines, and dedicate all streets, alleys, walks, parks, and other open spaces to public or private use as shown, in accordance with the Georgetown–Scott County Subdivision and Development Regulations, unless otherwise noted.

(Capitalization changed).

Neither document includes a provision for reimbursement or a refund to the developers of either subdivision for the utility lines. Nor is there a separate contract for reimbursement or a refund. Rather, the approving certificates show an intent on the part of GMWSS and the City to provide water and sewer service to the subdivisions in return for the developers' compliance with applicable specifications and for the dedication of the lines to GMWSS and the City once they were completed. Once the lines were dedicated to GMWSS and the City, they were responsible for all further maintenance, repair and costs associated with the lines, and ensuring that purchasers of the developers' lots were supplied with water and sewer service. Additionally, GMWSS and the City continue to be responsible for the costs associated with maintenance and upkeep of the pump stations, water treatment, and sewage treatment, without any payment from the developers. Accordingly, after the lines were dedicated to GMWSS and the City, they have full responsibility for the system, and the developers had no further

cost or responsibility associated with the maintenance of the lines. In return, GMWSS and the City receive paying customers for the utility services they provide.

The before-mentioned approval took place only after the developers demonstrated that they were in compliance with the City's infrastructure concerns. Thus, in the absence of GMWSS and the City's agreement to supply these services, i.e., capacity for infrastructure, the developers could not have moved forward with their project, for which the developers received a profit.

Once the infrastructure was in place and other improvements unrelated to the case at hand were made, the developers sold parcels of the property for residential lots on which home builders constructed homes. According to the deposition testimony of Fred Burch, one of the developers/owners, in pricing their lots, the developers took into account the total cost that went into developing the subdivision project and priced the lots at an amount to make a profit. Included in this computation were the developers' costs for streets, curbs, gutters, sewers, water, and other utilities. After these costs were calculated, Mr. Burch testified that the developers projected to make a profit of approximately $2,500.00 per lot. On Unit 5, Mr. Burch testified that he estimated the developers made a profit of $200,000.00, and on Unit 6, they made approximately the same profit. As to the computations made in pricing the lots, Mr. Burch's testimony at the hearing on this matter was in accord. However, in their brief before this Court, the developers contend that the price of each lot was based on the fair market value of each lot, not the prorated cost of infrastructure for each lot.

After their projects were approved, and after the developers received the appropriate certificates to begin construction, they came to believe they were entitled to a "cost recovery" for the costs associated with the installation of the water and sewer lines. Because they had "footed" the bill for the construction costs of these lines, they decided they wanted to recover their costs from GMWSS and the City. Nonetheless, it is undisputed that there was no agreement or understanding beforehand for reimbursement or a refund for the utility lines.

According to Mr. Burch's deposition, the developers did "research" and located Kentucky Revised Statutes (KRS) 96.539. They concluded this statute authorized reimbursement by GMWSS and the City for the cost associated with the installation of the water and sewer lines. However, prior to the commencement of the construction, the developers did not inform GMWSS or the City that they expected any reimbursement, nor were their intentions stated in any contractual language.

Nonetheless, relying on KRS 96.539, the developers filed declaratory judgment actions against GMWSS and the City and sought reimbursement for the cost of the installation of the water and sewer lines.[2] KRS 96.539 provides:

Any water or sewer utility owned by a city shall develop rules to govern extensions of service to unserved customers and areas. These rules may require that the applicant or applicants for new service pay to the utility all or part of the cost of extending utility lines. Where such payment is required, however, the cost of any extension greater than one hundred (100) feet per applicant shall be subject to refund by the utility on a prorated basis for each addi-

2. The developers filed separate actions which were later consolidated.

tional customer whose service line is directly connected to the extension line paid for by the initial applicant or applicants. The refund period shall extend at least ten (10) years, and in no case shall the refund amounts exceed the amount paid. Nothing in this section shall be construed to prevent a water or sewer utility from adopting extension or refund policies which are more lenient to customers than are herein specified.

It is undisputed that the City did not comply with KRS 96.539 because it had failed to develop rules to govern extensions of service to unserved customers and areas after the enactment of KRS 96.539. Nonetheless, from the record, it is abundantly clear that GMWSS and the City have authorized other developers to install water and sewer lines, even though the rules mandated under KRS 96.539 were not yet in place in the City of Georgetown. However, there is no evidence that GMWSS ever reimbursed any other developers for the costs associated with the installation of these types of lines going into a private development.

According to the developers' theory, KRS 96.539 authorizes reimbursement to developers for their costs of installation of the water and sewer lines. Since the lines have been installed, several homeowners have "tapped" into the lines and paid GMWSS a connection fee for doing so. The fees have generally ranged from $800.00 to $1,400.00 per lot, according to findings made by the circuit court. These fees represent GMWSS's actual costs for acquiring and installing a new water meter for each lot, the material and labor costs for laying water and sewer lines from the street (the point to which the developers had installed the lines), connecting the newly built homes to the lines, and the necessary connection fittings costs, as well as any other costs incurred in connecting a

new home to the water and sewer lines installed by the developers. Relying on KRS 96.539, the developers claim that these fees should be paid to them to reimburse them for their development costs.

GMWSS and the City responded to the developers' action denying that the developers were entitled to reimbursement under KRS 96.539 because it does not apply to developers as they are not "customers" nor "applicants" under the facts of this case. GMWSS and the City also claimed that the developers' actions were time barred.

The circuit court ordered that GMWSS and the City comply with the mandate of KRS 96.539, requiring them to develop rules to govern extensions of service to unserved customers and areas. After several attempts to develop rules consistent with the requirements of KRS 96.539, the circuit court rejected the proposed rules developed by GMWSS and the City and concluded that KRS 96.539 applied to the developers. Ultimately, the circuit court ordered GMWSS and the City to reimburse the developers for the costs of the installation of the water and sewer lines in excess of one hundred feet, not to exceed the amount actually collected by GMWSS for connection or tap-on fees charged to customers who connected to the lines installed by the developers. GMWSS and the City appeal this decision.

## II. STANDARD OF REVIEW

This matter involves a review of the legal interpretation applied by the circuit court to KRS 96.539. Accordingly, our review is *de novo*. "It is a fundamental rule that 'all statutes should be interpreted to give them meaning, with each section construed to be in accord with the statute as a whole.'" *Aubrey v. Office of Attorney General,* 994 S.W.2d 516, 518–519 (Ky.App. 1998) (citing *Transportation Cabinet v.*

*Tarter,* 802 S.W.2d 944 (Ky.App.1990)). "Statutes should not be construed such that their provisions are without meaning, whether in part or in whole." *Id.* (citing *George v. Scent,* 346 S.W.2d 784 (Ky. 1961)). "A court may not interpret a statute at variance with its stated language." *SmithKline Beecham Corp. v. Revenue Cabinet,* 40 S.W.3d 883, 885 (Ky.App.2001). The first principle of statutory construction is to use the plain meaning of the words used in the statute. *See Revenue Cabinet v. O'Daniel,* 153 S.W.3d 815 (Ky. 2005); KRS 446.080(4). "[S]tatutes must be given a literal interpretation unless they are ambiguous and if the words are not ambiguous, no statutory construction is required." *Commonwealth v. Plowman,* 86 S.W.3d 47, 49 (Ky.2002). We lend words of a statute their normal, ordinary, everyday meaning. *Id.* "We are not at liberty to add or subtract from the legislative enactment or discover meanings not reasonably ascertainable from the language used." *Commonwealth v. Harrelson,* 14 S.W.3d 541, 546 (Ky.2000).

### III. ANALYSIS

■ We agree with the circuit court that it is mandatory that GMWSS and the City develop rules to govern extensions of service to unserved customers and areas pursuant to KRS 96.539. Thus, we affirm the circuit court on this point.

■ However, we disagree that GMWSS and the City were required to include in these rules a provision for cost recovery such as that requested by the developers. Consequently, we disagree that GMWSS and the City are required to reimburse the developers for the costs associated with the installation of the water and sewer lines. We believe KRS 96.539 does not apply in situations such as the one at hand for a variety of reasons.

Therefore, we reverse as to this portion of the circuit court's opinion.

Applying rules of statutory construction and giving the terms "customers" and "applicants" their plain meaning, from any vantage point it is evident that these developers are not customers nor applicants for water or sewer service. The developers in this case never purchased water or sewer service from GMWSS. They never applied for such services, nor did they pay directly to GMWSS the cost for the installation of the lines as provided in KRS 96.539.

The plain meaning of the term "customer" is "one that purchases a commodity or service." *Merriam–Webster's Collegiate Dictionary* (10th ed.2001). It is undisputed that the developers neither purchased water nor sewer service from GMWSS. Consequently, they cannot be considered as customers under KRS 96.539.

Based on the patent reading of KRS 96.539, an applicant is someone who *applies* to become a customer for the purpose of purchasing water or sewer service. This meaning is evident because the last sentence of KRS 96.539 provides that "[n]othing in this section shall be construed to prevent a water or sewer utility from adopting extension or refund policies which are more lenient to *customers* than are herein specified." (Emphasis added). Earlier in the statute it references refunds going to *the applicant.* Accordingly, from the plain language of the statute, it is abundantly clear that the legislature intended this statutory provision to mean that applicants are individuals who intend to be customers of the utility. Clearly, the developers failed to meet this criteria; the record does not evidence that they applied for water or sewer service or that they were customers under KRS 96.539. Accordingly, KRS 96.539 does not apply to the developers, and therefore, their claim of entitlement to a reimbursement or re-

fund for the costs associated with the installation of the water and sewer lines falls flat.

Moreover, KRS 96.539 only provides for refunds where payment for the extension of lines have been made directly to the utility. Granting refunds to the developers in this matter is not in compliance with KRS 96.539. Acceptance of the developer's argument would require us to disregard the plain meaning of the statute in favor of an alternative and exaggerated reading of KRS 96.539. Doing so would violate long-standing statutory interpretation rules. Therefore, we decline to adopt the developers' theory of the meaning of KRS 96.539.

Regarding the developer's arguments that GMWSS and the City have received a free benefit in the form of the water and sewer lines installed by them, these arguments ring hollow. GMWSS and the City offer water and sewer services, making it possible for developers to develop parcels of property, for a profit, to sell as residential or commercial lots or units. The record establishes that without the proper infrastructure, Unit 5 and Unit 6 of The Colony would not have been approved for development. Thus, GMWSS and the City made it possible for the developers to profit from the services they provide. In this case, the record establishes that the developers reaped a combined profit of approximately $400,000.00. Moreover, once the lines were dedicated to GMWSS and the City, the developers were no longer responsible for further maintenance, repairs, connecting the lines to the homeowners' lots, etc. Further, the developers do not have to pay for the treatment of the water or sewer, or for maintenance or repair to the pumping stations.

Additionally, we find it highly significant that the final approving certificate for Unit 5 signed by representatives from GMWSS and the City, as well as the developers, included that the lines would be installed at the cost of the developers. The document does not include any provisions for reimbursements or a refund to the developers for the cost of the installation of the water and sewer lines. Accordingly, the developers received approval of their plans, without any expectation of reimbursement at that time, and consequently they did not ask for or negotiate reimbursement at the time the certificate was approved.

While this same language was omitted in the approving certificate for Unit 6, it is evident from Mr. Burch's testimony that at the *beginning stages of the project* the developers intended to recover the costs of installation of the water and sewer lines, but not from GMWSS or the City; rather, they included these costs into the computation of the price per lot or the costs would be covered by the profits they would receive from selling lots, even if ultimately the lot prices were set at market value.

Having concluded that KRS 96.539 is inapplicable in the case at hand and that Appellees are not entitled to reimbursement, issues surrounding statutes of limitation are hereby mooted. For the reasons as stated, we hereby affirm in part the portion of the Scott Circuit Court's Opinion and Order that finds that GMWSS and the City must comply with KRS 96.539 by developing the rules therein mandated. However, we reverse in part as to the lower court's determination that the Appellees are intended recipients of reimbursement or refund as provided pursuant to KRS 96.539. Accordingly, this matter is remanded to the Scott Circuit Court for proceedings consistent with this opinion.

ALL CONCUR.