MEADOWS HEALTH SYSTEMS EAST, INC. and Meadows Health Systems South, Inc., Appellants

v.

The LOUISVILLE/JEFFERSON COUNTY METRO REVENUE COMMISSION, Appellee.

No. 2009–CA–001839–MR.

Court of Appeals of Kentucky.

Aug. 3, 2012.

Kenneth S. Handmaker, Nicole S. Elver, Louisville, KY, for Appellant.

Michael J. O'Connell, Jefferson County Attorney, Terri A. Geraghty, Assistant Jefferson County Attorney, Louisville, KY, for Appellee.

Before ACREE, Chief Judge; STUMBO, Judge; LAMBERT,[1] Senior Judge.

## OPINION

LAMBERT, Senior Judge:

Appellants, Meadows Health Systems East, Inc. ("Meadows East") and Meadows Health Systems South, Inc. ("Meadows South") (sometimes collectively referred to as "Appellants"), appeal from an order of the Jefferson Circuit Court denying their motion for summary judgment and rejecting their claims against the Louisville/Jefferson County Metro Revenue Commission. Appellants contend that Appellee violated Kentucky constitutional and statutory law by imposing an occupational license fee on capital gains from the sale of Appellants' business assets. After careful consideration, we conclude that the circuit

---

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

court correctly denied Appellants' motion. Therefore, we affirm.

### Statement of Facts and Procedural History

The facts of this case are undisputed. Appellants are Kentucky corporations that formerly owned and operated two long-term health care facilities in Jefferson County. In January 2002, Appellants sold substantially all of their respective assets in the facilities to Facility Holdings, LLC, a Florida limited liability company. The sale of these assets resulted in a complete divestiture of Appellants' Jefferson County business operations.

Following the sale, Meadows East filed a request for an extension of time within which to file its 2002 Occupational License Return and tendered an estimated payment of $81,916.00 under protest. Meadows South filed a similar request and tendered an estimated payment of $54,000.00 under protest. These protests were lodged primarily because Appellants believed that Section 3.1 of the "Regulations of the Louisville/Jefferson County Revenue Commission," which allows for an occupational license fee to be assessed on a company's "net profits," was unconstitutional as applied to capital gains from the sale of a business.

By letters dated November 24, 2003, counsel for Meadows East and Meadows South made a demand for a refund of $79,745.00 and $53,617.00, respectively, attributable to those portions of the occupational license fees allocable to the sale of the aforementioned assets. Appellee, by counsel, denied the claims for refund on the grounds that "the City of Louisville, Jefferson County and the Louisville/Jefferson County Metro Government Code of Ordinances specifically provide that net profit shall include ordinary and capital gains."

Because Appellee had no additional administrative process or other procedure allowing a party to further challenge a license fee, Appellants filed an action in the Jefferson Circuit Court. Specifically, Appellants sought a declaratory judgment determining that Appellee's application of Section 3.1 in a manner imposing occupational license fees on capital gains realized from the sale of business assets not in the ordinary course of business violated Section 181 of the Kentucky Constitution and exceeded the statutory authority granted by the regulation's enabling statute, KRS 91.200. The parties agreed (and still do) that the material facts were undisputed.

On August 3, 2009, the circuit court entered an order denying Appellants' motion for summary judgment. The order provided the following justification for the court's decision:

> The Court finds that capital gains realized from the sale of a business fall within the broad definition of "net profit" as defined in the Commission's regulations and the enabling statutes and ordinances. Although the sale of the business may not be a part of the regular operation of a business, if the sale generates net profits those profits are subject to the tax.

On September 16, 2009, the circuit court made the order of August 3, 2009, final and appealable. The present appeal followed.

### Discussion

The primary issue before this Court is whether the circuit court correctly determined that capital gains from the sale of Appellants' businesses are subject to the local occupational license fee referenced above. For reasons that follow, we hold that such gains are properly subject to the license fee and that the regulations chal-

lenged by Appellants do not run afoul of the Kentucky Constitution or KRS 91.200.

Section 181 of the Kentucky Constitution expressly authorizes the General Assembly to "delegate the power to counties, towns, cities and other municipal corporations, to impose and collect license fees ... on franchises, trades, occupations and professions." Notably, Section 181 "requires no particular standard for measuring any tax." *Second St. Properties, Inc. v. Fiscal Court of Jefferson County*, 445 S.W.2d 709, 712 (Ky.1969); *see also City of Louisville v. Sebree*, 308 Ky. 420, 426, 214 S.W.2d 248, 252 (1948). It has also been said that "[t]he authority to tax under this section is as far-reaching and as sweeping as language could make it. It would be difficult to find three words that cover wider fields of employment than trades, occupations, and professions." *Hager v. Walker*, 128 Ky. 1, 107 S.W. 254, 256 (1908).

KRS 91.200 was enacted by the General Assembly to implement the authority granted to it by Section 181. It provides, in relevant part, as follows:

(1) The board of aldermen of every city of the first class, in addition to levying ad valorem taxes, may by ordinance impose license fees on franchises, provide for licensing any business, trade, occupation, or profession and the using, holding, or exhibiting of any animal, article, or other thing.

(2) License fees on a business, trade, occupation, or profession for revenue purposes may be imposed at a percentage rate not to exceed those hereinafter set forth on:

(a) Salaries, wages, commissions and other compensations earned by every person within the city for work done and

services performed or rendered in the city (all of such being hereinafter collectively referred to as "wages"); and

(b) The net profits of all businesses, professions, or occupations from activities conducted in the city (hereinafter collectively referred to as "net profits").

Thus, KRS 91.200(2)(b) allows a city to impose a license fee based on a percentage of "[t]he net profits of all businesses, professions, or occupations from activities conducted in the city[.]" This power "extends to all but the excepted activities stated in KRS 91.200, and as to all remaining activities is as comprehensive as the power expressly granted by Section 181." *Sebree*, 308 Ky. at 427, 214 S.W.2d at 252.

Notably, KRS 91.200 does not specifically define what constitutes "net profits" or indicate what income, if any, might be exempt from the reach of this provision. Appellee contends that by failing to more particularly define "net profits," the General Assembly has demonstrated the intent to delegate broad latitude to local governments in determining what constitutes such. We agree with this proposition. *Cf. Second St. Properties*, 445 S.W.2d at 712–13.

Pursuant to KRS 91.200, the Board of Aldermen of the City of Louisville enacted Section 112 of the City of Louisville Code of Ordinances.[2] Consistent with KRS 91.200, Section 112.02 provides that the occupational license fee is measured by "the net profit of all businesses, professions, or occupations from activities conducted in the city." Section 112.01 defines "net profit" as "[t]he taxable income from the operation of a business, profession, occupation, or enterprise for federal in-

---

**2.** Because of the merger of the Louisville and Jefferson County governments, the provisions relating to occupational license fees are now codified in Section 110 of the Louisville/Jefferson County Metro Code of Ordinances. The tax returns at issue in the present case were for the year 2002 and are, therefore, subject to Section 112.

come tax purposes after provision for all costs and expenses incurred in the conduct thereof." Section 112.01 further provides that as to partnerships and S-corporations, "net profit" also means "the licensee's gross receipts or sales from its trade, business, profession, or occupation including but not limited to interest, dividends, rents, royalties, ordinary and capital gains or losses, and other income as defined for federal income tax purposes" less certain income and deductions.

In Section 112.10 of the Code of Ordinances, the city of Louisville delegated to Appellee the authority to promulgate regulations relevant to the collection and administration of occupational license fees.[3] With the authority granted by this ordinance, Appellee adopted its own "Regulations of the Louisville/Jefferson County Revenue Commission" regarding what constitutes "net profits." These regulations are consistent with the provisions of the Code of Ordinances. For instance, Section 3.1 of the regulations generally addresses the occupational license fee on "net profits." It provides, in relevant part, as follows:

> The City of Louisville and Jefferson County impose a license fee measured by a percentage of the net profits of corporations, partnerships, fiduciaries, sole proprietors and other enterprises engaged in any business, profession, occupation or other activity in the City/County[.]

Section 1.4(O) defines "net profit" as "the income from the operation of a business, profession, occupation or enterprise after provision for all costs and expenses incurred in the conduct thereof[.]" Sections 3.7 and 3.9 include "ordinary and capital gains" as "net profits" in setting forth how the latter are to be determined. Section 3.12 of the regulations more specifically addresses the occupational license fee on capital gains arising from the sale of a business:

> Gains realized from the sale of a business are subject to the license fee if the person receiving the gain has been engaged in the business within the City/County at any time; the license fee on the gain shall be included in the net profit of the person receiving the gain for the year in which the gain is recognized regardless of whether the person receiving the gain was otherwise engaged in that business within the City/County during that year and regardless of whether or not the business was active during the year the gain was recognized.[4]

■ Accordingly, it is apparent that the ordinances and regulations in question allow for ordinary and capital gains—including those from the sale of a business—to be subject to the local occupational license fee. It is further apparent that when Appellants sold their respective business assets, these transactions produced such gains. Appellants contend that these ordi-

---

3. Such delegation has been recognized as valid. See *Commissioners of Sinking Fund of City of Louisville v. Doyle's Estate*, 573 S.W.2d 932, 936 (Ky.App.1978).

4. Appellee argues—correctly—that Appellants failed to directly challenge the legitimacy of Section 3.12 in the proceedings below. Instead, their arguments addressed only Section 3.1. With this said, Appellants unquestionably argued below that Appellee was constitutionally and statutorily prohibited from im-

posing an occupational license fee on capital gains from the sale of a business. Consequently, although the question is a close one, we believe any arguments regarding Section 3.12 in that context have been properly preserved for review. However, we decline to consider any of Appellants' arguments regarding Section 3.12 that challenge the provision in a broader context inapplicable to the limited factual scenario presented here.

nances and regulations are unconstitutional and exceed the authority granted to Appellee by KRS 91.200, but this Court simply cannot agree with this proposition.

As noted above, Section 181 of the Kentucky Constitutional is broad in its scope and leaves considerable discretion to the General Assembly in determining how license fees on franchises, trades, occupations, and professions are to be imposed and collected. KRS 91.200 allows a city to impose a license fee based on a percentage of "[t]he net profits of all businesses, professions, or occupations from activities conducted in the city[,]" KRS 91.200(2)(b), but does not set forth what comprises "net profits" or otherwise define that term. Consequently, these provisions do not expressly prohibit capital gains of any sort—including those obtained via the sale of a business—from being subject to an occupational license fee.

Indeed, in a previous decision, this Court explicitly recognized that capital gains produced by the sale of business assets are subject to the occupational license tax pursuant to KRS 91.200. In *Commissioners of Sinking Fund of City of Louisville v. Doyle's Estate, supra,* we noted that in promulgating KRS 91.200, "[t]he General Assembly specifically directed that the occupational tax is to be computed at a percentage of the net profits of businesses, trades, and occupations." *Doyle's Estate,* 573 S.W.2d at 936. We then noted: "We have little difficulty in concluding that the legislature intended net profits to include *all* activities which generate income for a business." *Id.* (Emphasis added). These activities included the sale of business assets: "It seems clear that gain on the sale of assets is a natural part of the earnings an individual, a partnership, or a corporation derives from a business and, as such, should be subject to the license tax in the same manner and to the same

extent as capital gains are considered to be taxable income for federal taxes." *Id.*

In response, Appellants argue that this precedent is inapplicable in the present case and effectively contend that the capital gains in question should be exempt from the occupational license fee because they sold nearly *all* of their assets and effectively terminated their business operations. In this regard, Appellants contend, correctly, that as a general matter tax statutes are to be strictly construed and all doubts or ambiguities resolved in favor of the taxpayer. *SmithKline Beecham Corp. v. Revenue Cabinet,* 40 S.W.3d 883, 885 (Ky.App.2001); *Revenue Cabinet, Commonwealth v. Gaba,* 885 S.W.2d 706, 708 (Ky.App.1994). However, in cases where a party claims statutory exemption from taxation, the converse is true and ambiguities are strictly construed *against* the taxpayer. *Stoner Creek Stud, Inc. v. Revenue Cabinet Commonwealth of Kentucky,* 746 S.W.2d 73, 75 (Ky.App.1987). Moreover, "[a]n exemption from tax will not be presumed or implied." *Id.* at 76. Instead, "[o]ne who claims an exemption must prove he is within its parameters." *Kentucky Dept. of Revenue v. Hobart Mfg. Co.,* 549 S.W.2d 297, 299 (Ky.1977); *see also Delta Air Lines, Inc. v. Com., Revenue Cabinet,* 689 S.W.2d 14, 18 (Ky.1985). Exemptions from taxation are generally disfavored and all doubts in this regard are to be resolved against an exemption. *Delta Air Lines,* 689 S.W.2d at 18; *Kentucky Dept. of Revenue v. Bomar,* 486 S.W.2d 532, 533 (Ky.1972).

In this case, nothing within Section 181 of the Kentucky Constitution or KRS 91.200 precludes or exempts capital gains of any type from being considered "net profits." As to the latter provision, we further note that "[w]hen no exceptions exist in a statute, there is a presumption that the lack of exceptions reflects a con-

scious decision by the General Assembly; and a court lacks authority to graft an exception onto a statute by fiat." *Benet v. Commonwealth,* 253 S.W.3d 528, 533 (Ky. 2008). KRS 91.200(3) sets forth a number of activities that are not subject to occupational license fees but fails to exempt capital gains or sales from the liquidation of a company. Instead, the only language in KRS 91.200(2)(b) limiting the scope of "net profits" is that the profits are to be derived only "from activities conducted in the city[.]" Stated simply, nothing in the Kentucky Constitution or KRS 91.200 exempts capital gains from the sale of a business from imposition of the occupational license fee at issue. Thus, this Court may not read such an exemption into effect by implication.[5]

■ Appellants next contend that pursuant to "Regulations of the Louisville/Jefferson County Revenue Commission" Section 3.1, occupational license fees may only be taken from "net profits of corporations, partnerships, fiduciaries, sole proprietors and other enterprises engaged in any business, profession, occupation or other activity in the City/County[.]" Similarly, Section 1.4(O) defines "net profit" as "the income from the operation of a business, profession, occupation or enterprise after provision for all costs and expenses incurred in the conduct thereof[.]" Based upon these provisions, Appellants argue that in order for capital gains to be subject to a fee, it must be the result of a business "engaging" in a business, occupation, or profession or "operating" in such a manner. Appellants assert that selling off nearly the entirety of their business assets does not constitute "engaging" in a busi-

ness or "operating" a business as contemplated and limited by the Kentucky Constitution.

Instead, Appellants argue that these acts constituted "isolated" or "single" transactions of a type not properly subject to an occupational license fee. Appellants specifically rely upon *Karnes v. City of Benton,* 258 Ky. 425, 80 S.W.2d 558 (1935), in which it was held that a farmer who resided outside of Benton and sold butchered hog meat in the city occasionally was not subject to a local license fee ordinance that addressed butcher shops and meat dealers. The ordinance was enacted under the authority of Section 181 of the Kentucky Constitution. The then-Court of Appeals explained its decision as follows:

> The words "trades," "occupations," or "professions," mean to "engage in" or "carry on" a business for subsistence or profit, and not merely engaging in or conducting an isolated or a single transaction, such as a farmer engages in when selling the surplus meat of the hogs slaughtered on his farm. The sale of farm products in such case is merely an incident to the principal business of farming, and, in selling meat produced on his farm within the corporate limits of Benton, Karnes was not carrying on, or engaging in, the "business, trade, occupation or profession" of a butcher or dealer in meats as these terms are used in the ordinance[.]

*Id.,* 258 Ky. 425, 80 S.W.2d at 560.

In this case, Appellants contend that they were "in the business of running nursing homes ... not in the business of buying and selling nursing homes" and

---

5. Appellants argue that had the General Assembly intended to allow cities to include capital gains from the sale of a business as "net profits" subject to a license fee, it would have explicitly said such in KRS 91.200. However, this argument carries little weight

because the converse is just as true—the General Assembly easily could have written KRS 91.200 so as to explicitly exempt such gains from the fee. It chose not to do so, which we must assume was done by conscious decision. *Benet,* 253 S.W.3d at 533.

that each Appellant's respective sale of its business was a "single" or "isolated" transaction per *Karnes*. However, *Karnes* is not applicable here as that case ultimately only considered whether certain limited activities by an individual conducting a business, profession, or occupation for purposes of assessing an occupational license tax. The farmer in *Karnes* did not engage in continued activity as a butcher or meat dealer within the city of Benton. Instead, his occasional sale of meat was merely incidental to his principal work as a farmer and did not constitute a "business" for purposes of the license fee.

In contrast, Appellants were clearly in "business" as long-term nursing facilities within Jefferson County. The fact that they sold nearly all of their respective assets does not remove these transactions from the realm of "business activity" or the gains from them from the umbrella of "net profits." Appellants provide us with no persuasive grounds for concluding that the "net profits" gained from the running of a business and the selling of that business's assets should be treated differently for purposes of an occupational license fee. *Karnes* provides no authority for this contention, and neither Kentucky Constitution Section 181 nor KRS 91.200 supports this perspective. Such a result would also be inconsistent with the holding in *Commissioners of Sinking Fund of City of Louisville v. Doyle's Estate, supra.* Although Appellants' sale of their assets was not a "normal" transaction, it was nonetheless an undertaking that was conducted for profit.

Accordingly, we believe that the extraordinary or unusual nature of the business transaction or activity carries no significance as long as it generates "net profits" for the business entity. Thus, the fact that Appellants sold off nearly all of their business assets does not remove the gains made from the transactions from the realm of "net profits."

■ Appellants next argue that Appellee's imposition of an occupational license fee on capital gains from the sale of a business effectively constitutes an income tax and exceeds the statutory authority set forth in KRS 91.200 to impose a license fee. Although it is well-established that license fees on "net profits" are not considered "income taxes," *see generally Sebree, supra,* Appellants contend that the transactions here should be viewed differently because the separate treatment of capital gains and other net profits of businesses, professions, and occupations under federal and state income tax law indicates that capital gains should not be included in, or treated the same as, "[t]he net profits of all businesses, professions, or occupations from activities conducted in the city[.]" KRS 91.200(b)(2).

However, this argument fails for many of the same reasons set forth above. Neither Section 181 of the Kentucky Constitution nor KRS 91.200 precludes capital gains from the sale of a business from being considered "net profits" for purposes of an occupational license fee—no matter how such gains are otherwise treated for income tax purposes. Thus, the fact that capital gains receive special treatment or are reported separately on Appellants' federal or state income tax returns is of little relevance in this case. If the General Assembly wishes capital gains to be exempt from an occupational license fee, this can easily be accomplished by statute. Thus far, however, that body has declined to include such language in KRS 91.200 and has instead left the question of what constitutes "net profits" to the judgment of municipal governments.

Appellants finally contend that the net gain from the sale of their businesses does not constitute "earned" revenue which may

be lawfully subject to the license fee. They rely upon the decision of the Supreme Court of Kentucky in *Commissioners of Sinking Fund of City of Louisville v. South Central Bell Telephone Co.*, 809 S.W.2d 380 (Ky.1991), in which the Court held that lump-sum early retirement benefits were not subject to Louisville's occupational license fee because the Court did not consider those benefits to have been "earned" as required by what was then KRS 91.200(1)(a).[6] *Id.* at 381–82.

However, *South Central Bell* dealt with individual employees—not businesses. As noted by Appellee, KRS 91.200 classifies income for license fees according to its source, with one classification consisting of "[s]alaries, wages, commissions and other compensations earned by every person within the city for work done and services performed or rendered in the city[,]" KRS 91.200(2)(a), and the other consisting of "[t]he net profits of all businesses, professions, or occupations from activities conducted in the city[.]" KRS 91.200(2)(b). Unlike KRS 91.200(2)(a), KRS 91.200(2)(b) contains no limiting language requiring a business's "net profits" to have been "earned" in order to be subject to an occupational license fee. Unlike *South Central Bell,* the present case does not deal with individuals who are rendering personal labor or services to an employer. This difference cannot be ignored and as a result of it, *South Central Bell* is inapplicable here.

### Conclusion

In sum, no exception is to be found in the relevant ordinances, enabling statute, or Kentucky Constitution that would limit or preclude capital gains from the sale of Appellants' business assets from being considered "net profits" and from being subject to the local occupational license fee. Therefore, the circuit court properly determined that capital gains from the sale of Appellants' businesses are subject to the fee.

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.

6. The language then included in KRS 91.200(1)(a) was moved by amendment to a new section, KRS 91.200(2)(a), in 2003. 2003 Kentucky Acts Ch. 117 § 20 (HB 107).