**Darryl K. BOARMAN, Appellant**

v.

**GRANGE INDEMNITY INSURANCE COMPANY, Appellee.**

No. 2012–CA–002199–MR.

Court of Appeals of Kentucky.

July 18, 2014.

---

**11.** We have cited this unpublished opinion in accordance with Kentucky Rules of Civil Procedure 76.28(4).

Charles E. Moore, Dion Moorman, Owensboro, KY, for appellant.

Max S. Hartz, Owensboro, KY, for appellee.

Before ACREE, Chief Judge; JONES and VANMETER, Judges.

## OPINION

VANMETER, Judge:

Darryl K. Boarman appeals from the order of the Daviess Circuit Court titled "Amended Findings, Conclusions, Judgment" which held Boarman waived his statutory right to uninsured motorist ("UM") benefits and thus could not recover such benefits under his car insurance policy with Grange Indemnity Insurance Company ("Grange"). For the following reasons, we reverse and remand.

Boarman was involved in an automobile accident on December 13, 2009, when another driver, Amanda Poole, ran a red light and crashed into Boarman's Jeep Grand Cherokee. Boarman sustained permanent injuries, including torn ligaments in his shoulder, which required surgery. Poole and the vehicle she drove during the accident were uninsured. Boarman filed a civil action against Poole for his injuries, and a judgment was entered against Poole, finding that her negligence was responsible for Boarman's injuries. Boarman was awarded $91,252.24 for damages sustained during the accident. However, the judgment has not been collected since Poole was uninsured and cannot be located.

Boarman, however, was insured at the time of the accident. Boarman's wife, Tonya, purchased an insurance policy with Grange in November 2009, listing both herself and Boarman as named insureds for the couple's 2002 Jeep Grand Chero-

kee. Boarman made a claim for UM benefits under his policy with Grange, but Grange refused to pay any UM benefits on grounds that Tonya had rejected such coverage in writing.

Boarman testified that when Tonya went to apply for the new policy with Grange, he asked her to acquire the same type of coverage they had with their previous insurer, State Farm. The Boarmans' policy with State Farm included UM coverage with policy limits of $50,000/$100,000. When Tonya purchased the policy on the couple's behalf, she signed a document entitled "Kentucky Passport Application" waiving the insured's statutory right to UM benefits. The document waiving UM benefits contained two signature lines, one for an "Applicant Signature" and another for a "Co–Applicant Signature." Tonya signed the "Applicant Signature" line, but the "Co–Applicant Signature" line was never signed. Boarman received and reviewed the policy and paid the premiums that did not include the cost of UM benefits.

Boarman filed suit against Grange to recover UM benefits to which he believed he was statutorily entitled. Grange claimed that Tonya had acted as Boarman's agent in acquiring the policy and rejecting UM coverage. The trial court granted Grange's motion for summary judgment, finding that Tonya acted as Boarman's agent and rejected UM benefit coverage on Boarman's behalf when she applied for the policy and signed the UM coverage waiver. This appeal follows.

Boarman makes two arguments on appeal: (1) the trial court misinterpreted KRS [1] 304.20–020 by holding that Boarman did not have to personally reject his right

---

1. Kentucky Revised Statutes.

to statutory UM benefits; and (2) his wife was not acting as his agent when she signed the UM benefits waiver, nor did he ratify her alleged rejection of his UM coverage.

██ CR[2] 56.03 provides that summary judgment is appropriate when no genuine issue of material fact exists and the moving party is therefore entitled to judgment as a matter of law. Summary judgment may be granted when "as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." *Steelvest, Inc. v. Scansteel Serv. Ctr.*, 807 S.W.2d 476, 483 (Ky.1991) (internal quotations omitted). Whether summary judgment is appropriate is a legal question involving no factual findings, so a trial court's grant of summary judgment is reviewed *de novo*. *Coomer v. CSX Transp., Inc.*, 319 S.W.3d 366, 370–71 (Ky.2010). Further, "[t]he construction and application of statutes is a matter of law and may be reviewed *de novo*." *Bob Hook Chevrolet Isuzu, Inc. v. Commonwealth of Ky. Transp. Cabinet*, 983 S.W.2d 488, 490 (Ky. 1998).

Boarman first argues that the trial court misinterpreted KRS 304.20–020(1), which states:

> (1) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in KRS 304.39–110 under provisions approved by the commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; **provided that the named insured shall have the right to reject in writing such coverage;** and provided further that, unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him or her by the same insurer.

(emphasis added). Boarman contends that the language "**the** named insured" indicates legislative intent to require each named insured to personally reject UM coverage in writing. Grange argues that the legislature could not have intended to force "all" named insureds to individually reject UM coverage. The trial court decided that the language of the statute was of less importance than the legislature's intent, which the trial court determined could not have been to require all named insureds to individually reject UM coverage.

Kentucky courts have not addressed this issue, but each party cites various other state court decisions involving similar UM coverage rejection statutes. The other jurisdictions cited are split as to whether each named insured must personally reject UM benefits or if the named insured purchasing the auto insurance policy may make the decision for all parties covered thereunder. In this case, we believe the trial court overlooked the plain, unambiguous language of the statute in favor of an

---

**2.** Kentucky Rules of Civil Procedure.

interpretation which would be less burdensome to insurance companies and insurance transactions, and we must therefore disagree with the trial court's determination.

■■■ The foremost principle of statutory construction is that when a statutory term is plain and unambiguous the courts must apply the statute as written. *Smith-Kline Beecham Corp. v. Revenue Cabinet,* 40 S.W.3d 883, 885 (Ky.App.2001). "[S]tatutes must be given a literal interpretation unless they are ambiguous and if the words are not ambiguous, no statutory construction is required." *Commonwealth v. Plowman,* 86 S.W.3d 47, 49 (Ky.2002). The only exception is where strict adherence would lead to a "nonsensical result." *Overnite Transport Co. v. Gaddis,* 793 S.W.2d 129, 131 (Ky.App.1990).

■■■ We do not find the need to consider public policy because we do not believe the statutory language is ambiguous. The statute in question states that UM coverage is a part of every policy of insurance *unless* "**the** named insured" rejects such coverage in writing. The General Assembly could very easily have used different language if it intended to require anything less than a signed waiver by each individual named insured on the policy.[3] In fact, other portions of Kentucky Revised Statutes Chapter 304, Subsection 20 refer to a "first-named insured" or "applicant" and use those terms to refer to distinct events. *See, e.g.,* KRS § 304.20–040 (using specific terms to indicate which party the statute

addresses). Further, we have found no evidence that the General Assembly intended to protect the convenience of insurance transactions. Thus, we believe that the statute is unambiguous, and the only reasonable interpretation of KRS 304.02–020(1) mandates UM coverage for every named insured listed on a policy of liability insurance unless that named insured has individually signed a waiver for UM coverage. As a result, public policy considerations are unnecessary.

Nonetheless, we believe the trial court's decision was not consistent with the General Assembly's primary purpose in enacting this statute. "This jurisdiction has adopted the view that KRS 304.20–020 was intended to establish a general outline of *required uninsured motorist coverage* which liability insurers must provide with the precise coverage afforded to be defined by reasonable terms and conditions included in the various insurance contracts." *Kentucky Ins. Guar. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 689 S.W.2d 32, 35 (Ky.App.1985) (emphasis added). Keeping this overall purpose in mind, we believe the General Assembly's clear purpose in enacting KRS 304.20–020(1) was to mandate UM coverage unless each named insured affirmatively opted out of such coverage. In other words, the statute was enacted primarily to ensure that UM coverage would be a part of every named insured's policy of insurance unless that insured knowingly waived his or her statutory right to receive it. We believe that

---

**3.** The statutes of some of our sister jurisdictions illustrate how our General Assembly *could* have easily used different language had its intent been something other than to require a separate waiver from each named insured. *See, e.g., Duke v. Evans,* 104 So.3d 464, 466, (La.App. 2 Cir.2012) ("Section 1295 provides that UM coverage may be validly rejected by 'any insured named in the policy.' "); *Swartzbaugh v. Encompass Ins. Co. of*

*America* 425 Md. 614, 621, 42 A.3d 587, 591 (Md.2012) (noting that the relevant statute provides "If the first named insured ... does not wish to obtain uninsured motorist coverage ... under the policy or binder, the first named insured shall make an affirmative written waiver of having uninsured motorist coverage in the same amount as the liability coverage.").

the result reached by the trial court is inconsistent with the overall public policy considerations that motivated the General Assembly to enact a system in which UM coverage would be the default for all named insureds. *See Nationwide Mut. Ins. Co. v. Pasion,* 219 Conn. 764, 771, 594 A.2d 468, 472 (Conn.1991) (stating "[t]o permit the signature of one named insured to bind other, possibly uninformed, named insureds would circumvent the legislature's intent that the decision to reduce uninsured motorist coverage by consumers be an informed one[.]").

■ We also disagree that Tonya acted on Darryl's behalf in waiving UM coverage. In this case, two named insureds are listed on the policy, Tonya and Darryl. The UM waiver Grange presented required a signature for the "applicant" and "co-applicant." Tonya signed her own name as the applicant waiving UM coverage. She did not purport to sign on behalf of her husband as she left the co-applicant section blank. Furthermore, even though Darryl authorized Tonya to apply for insurance for their vehicles, nothing in the record suggests that he authorized her to waive UM coverage on his behalf. In fact, the evidence is to the contrary. Darryl testified that he told Tonya to procure a policy like the one they previously had with State Farm. The State Farm policy included UM coverage.

Moreover, even if Darryl had authorized Tonya to waive coverage on his behalf, we see no evidence in the record to suggest that she did so in the manner required by KRS 304.20–020(1). Tonya signed only as "applicant" on her own behalf. The record fails to disclose any evidence that Tonya signed a waiver on Darryl's behalf. Had Tonya intended to waive coverage for Darryl, she would have signed his name or her name as his agent under the co-applicant section of the waiver.

■ Finally, we do not believe Darryl ratified any of Tonya's actions. The parties, including Grange, are presumed to know the law. The law requires a signed waiver by the named insured to waive UM coverage as related to that named insured. Darryl knew that he did not sign a waiver and the waiver executed by Tonya was in her name only. In the absence of the waiver, UM coverage was part of the contract of insurance. We therefore find that a grant of summary judgment in favor of Grange was inappropriate in this case.

The order of the Daviess Circuit Court is reversed and remanded for further proceedings consistent with this opinion.

ALL CONCUR.